43 S.W.3d 60 (2001)
In the Interest of J.M.S.
No. 01-00-00051-CV.
Court of Appeals of Texas, Houston (1st Dist.).
March 1, 2001.
*61 Joel Johnston Correia, Bacliff, Tx, attorney ad litem.
Kathryn Bradfield Lanan, Texas City, Tx, Greg Neal Russell, Galveston, Tx, for appellant.
B. Warren Goodson, Jr., Galveston, TX, for appellee.
Panel consists of Justices O'CONNOR, HEDGES, and FRANK C. PRICE (Assigned).

OPINION
PRICE, J.[*]
Shown Sims (the Father) and Katherine Sims (the Mother), the appellants, appeal from an order terminating the parent-child relationship. We affirm.

Background
The Texas Department of Protective and Regulatory Services (DPRS), the appellee, took custody of newly born J.M.S. when he was discharged from UTMB hospital. Temporary custody, pending trial, was awarded to DPRS by the trial court *62 based on an affidavit, filed by case worker Constance DeQuire, alleging "risk of physical abuse."
During the trial to terminate the parent-child relationship, it was established that, previously, both of J.M.S.'s parents had their parental rights terminated with respect to their two other children. J.M.S.'s mother pleaded guilty to intentionally injuring one of her children when she broke his arm and refused to seek medical attention. With regard to the other child, both mother and father lost their parental rights when they allowed the child to remain in conditions and surroundings that endangered his physical and mental well-being.
After analyzing the evidence, the jury found that termination of the parent-child relationship of each parent was in J.M.S.'s best interest.

Sufficiency of the evidence
In the Mother's point of error one and the Father's sole point of error, they assert the evidence did not support the implied finding that the termination of their parental rights was in the best interest of the child.
Preservation of error
There are four ways to preserve a challenge to the legal sufficiency of evidence: (1) a motion for instructed verdict; (2) an objection to the submission of a jury question; (3) a motion for judgment notwithstanding the verdict; or (4) a motion for new trial. Cecil v. Smith, 804 S.W.2d 509, 510-511 (Tex.1991); Neller v. Kirschke, 922 S.W.2d 182, 187 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Neither the Mother nor the Father employed any of these options. The Mother and the Father, thus, waived any legal sufficiency challenge.
In order to present a challenge to the factual sufficiency of the evidence on appeal, it must be preserved in the trial court by pursuing a motion for new trial. Tex. R.Civ.P. 324(b)(2), (3); Cecil, 804 S.W.2d at 510. Neither the Mother nor the Father filed such a motion. Therefore, this issue is waived because nothing is preserved for review.
We overrule the Mother's point of error one, and the Father's sole point of error.

Effective assistance of counsel
In the Mother's point of error two, she asserts she was deprived of effective assistance of counsel because her trial attorney did not (1) object to the constitutionality of the statute upon which grounds for termination was granted; (2) object to the admission of cumulative and prejudicial evidence; (3) move for a directed verdict; and (4) move for judgment notwithstanding the verdict.
Standard of review
Section 107.013(a)(1) of the Texas Family Code requires the mandatory appointment of an attorney ad litem for indigent parents whose relationship rights with their children are in jeopardy of being terminated. Tex.Fam.Code Ann. 107.013(a)(1) (Vernon Supp.2000). The Austin, Beaumont, Dallas, Eastland, and Tyler Courts of Appeals have held the constitutional right to effective assistance of counsel in criminal actions does not extend to a civil proceeding for termination of parental rights. In re B.B., 971 S.W.2d 160, 172 (Tex.App.-Beaumont 1998, pet. denied); Arteaga v. Texas Dep't of Protective and Regulatory Servs., 924 S.W.2d 756, 762 (Tex.App.-Austin 1996, writ denied); In re J.F., 888 S.W.2d 140, 143 (Tex.App.-Tyler 1994, no writ); Posner v. Dallas County Child Welfare Unit, 784 S.W.2d 585, 588 (Tex.App.-Eastland 1990, writ denied); Howell v. Dallas County *63 Child Welfare Unit, 710 S.W.2d 729, 734-35 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). We refuse to follow these courts. If we require mandatory appointment of counsel, we must hold the appointed counsel accountable if they are ineffective.
We agree with the Waco Court of Appeals, which recently held, "[T]he right to counsel in termination cases likewise means the right to the effective assistance of counsel." In re A.Y., No. 10-99-214-CV, slip op. at 1 (Tex.App.-Waco 2001, no pet. h.). The right to effective assistance of counsel is dependent on the right to counsel itself. Evitts v. Lucey, 469 U.S. 387, 396 n. 7, 105 S.Ct. 830, 836 n. 7, 83 L.Ed.2d 821 (1985). If the Mother had no constitutional right to counsel, she could not be deprived of effective assistance of counsel. See Wainwright v. Torna, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982). Here, there is no question the Mother had a statutory right to counsel; therefore, she was entitled to effective counsel.[1]
The United States Supreme Court has unanimously held that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment." M.L.B., 519 U.S. 102, 103, 117 S.Ct. 555, 565, 136 L.Ed.2d 473 (1996). It also unanimously held that "[f]ew consequences of judicial action are so grave as the severance of natural family ties." Id. For these reasons, the United States Supreme Court places termination of parental rights cases in the same category as criminal cases and analogizes a parent losing parental rights to "a defendant resisting criminal conviction" because both seek "to be spared from the State's devastingly adverse action." Id., 519 U.S. at 125, 117 S.Ct. at 568. Most jurisdictions also demand a higher standard of proof than the "preponderance of evidence" standard used in most civil cases in proceedings to terminate parental rights. Id. 519 U.S. at 119 n. 11, 117 S.Ct. at 565 n. 11. Because this case is more like a criminal case than a civil case, we should apply the same right to counsel standard that we apply to criminal cases. This standard requires that the right to counsel means the right to effective counsel.
In Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court established that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland established two components for determining the proper standard for attorney performance. First, the performance must be deficient to the level that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the *64 defense. Id. 466 U.S. at 687, 104 S.Ct. at 2064. In other words, the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. 466 U.S. at 694, 104 S.Ct. at 2068.
There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. 466 U.S. at 689, 104 S.Ct. at 2065. The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. Id. Furthermore, such a complaint can be raised for the first time on appeal without being preserved in the trial court. However, by not presenting the issue in a motion for new trial and developing a record of ineffective behavior, the proponent of the claim has a difficult burden to overcome: that the challenged action might be considered sound trial strategy. See id.
Constitutionality
The Mother argues her trial counsel was ineffective for not objecting to the Texas Family Code section 161.001(1)(L) and (M) on the ground that these subsections of the statute are unconstitutional on their face, in that they are overly broad and deprive a parent and child of their constitutional right to due process and equal protection. This argument is based on the fact the subsections rely on earlier acts or omissions of the parents related to another child without the need for a causal connection to the treatment of the child in question.
We have previously held the termination of a child based on the previous termination of another child is constitutional. Avery v. State, 963 S.W.2d 550, 553 (Tex. App.-Houston [1st Dist.] 1997, no writ). Therefore, the Mother's trial counsel was not ineffective by not objecting on constitutional grounds.
Cumulative & prejudicial evidence
The Mother contends her trial counsel was ineffective because she allowed the presentation of cumulative and prejudicial evidence regarding the earlier termination of the Mother's two other children. The Mother concedes that if subsections (L) and (M) are constitutional, simply admitting the judgment from the earlier termination proceedings would have been sufficient justification to terminate her relationship with J.M.S. The Mother argues this cumulative evidence, however, was distracting to the "best interest" determination.
When determining the best interest of the child, the court considers (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse of the acts or omissions of the parents. Holley v. Adams, 544 S.W.2d 367, 372 (Tex.1976).
We must consider the overall family environment, which includes examining the Father's behavior. The Father was diagnosed with a variety of psychiatric conditions, including depression. He did not attend eight of the 11 follow-up appointments *65 after being hospitalized following a suicide attempt. The Father suffers from delusional thoughts which encourage him to injure the Mother. Despite the potential damage from this emotional condition, the Father still did not return for appointments after his discharge. This failure to address the Father's mental condition affects the stability of the home and the emotional well-being of those residing there.
The Mother and the Father refused marital counseling when it was offered by the University of Texas Medical Branch at Galveston. They denied they needed counseling. Despite this denial, there was evidence the Father had been physically violent toward the Mother. For example, he "busted" her nose and gave her a black eye. The Father failed numerous drug tests, including one performed two weeks before the beginning of the termination trial. The Father and Mother resided in five different residences in the 14 months between J.M.S.'s birth and the time of trial.
These factors all support the determination that it was in J.M.S.'s best interest to terminate the parent-child relationship.
Jennifer Vincent's testimony
The Mother contends the testimony of Jennifer Vincent, the Father's sister, was irrelevant and remote. The Mother's first child was placed with Vincent and has had no contact with the Mother since before J.M.S. was born.
Vincent testified that, when she saw the injury to the first child, she drove him directly to the hospital. The Mother had broken his arm the day before, but refused to seek medical attention for him. A medical expert testified that, based on the type of fracture, the child would have been in so much pain, he would have cried until he passed out from exhaustion. This testimony certainly addressed the Mother's ability to care for J.M.S.'s emotional and physical needs. See Holley, 544 S.W.2d at 372.
It does not matter that some of the parental conduct considered in a termination proceeding occurred before the child's birth. Rather, courts look to what the parent did both before and after the child's birth to determine whether termination is necessary. Avery, 963 S.W.2d at 553.
Lynn Chamberlin's testimony
The Mother objects to the testimony of Lynn Chamberlin, the prosecuting attorney in the case involving the other children, because Chamberlin's testimony was cumulative and prejudicial.
The Mother had a different explanation for the events surrounding her son's broken arm. Chamberlin introduced the medical records and documents relating to the prior termination. This falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. The mother has not overcome the presumption that the challenged action might be considered sound trial strategy. See id.
The Mother's trial counsel was not ineffective for not objecting to testimony relating to the previous termination proceedings. There was no showing that the testimony was inadmissible either as evidence generally relied upon in such proceedings or as impeachment evidence because of the Mother's "version" of prior events.
Directed verdictjudgment notwithstanding the verdict
The Mother asserts her trial counsel was ineffective for not requesting a directed verdict at the close of the State's case and for not filing a judgment notwithstanding the verdict after the jury returned its verdict. She contends the State *66 did not meet its burden of proof that, by clear and convincing evidence, termination was in the best interest of the child.
Having found the evidence supports the jury's finding that termination was in the best interest of J.M.S., it is unnecessary for us to address these portions of the appeal.
We overrule the Mother's point of error two and affirm the judgment.
Justice O'CONNOR not participating.[2]
NOTES
[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.
[1] By analogy, it can be argued that parental notification cases are quasi-criminal in nature. Actions are brought against the parents by the State, and although the punishment is not punitive, it takes the form of removal of rights. See M.L.B. v. S.L.J., 519 U.S. 102, 117-118, 117 S.Ct. 555, 564-565, 136 L.Ed.2d 473 (1996).

Juvenile proceedings are quasi-criminal. In re D.I.B., 988 S.W.2d 753, 756 (Tex.1999). Juveniles are entitled to effective assistance of counsel. M.R.R. v. State, 903 S.W.2d 49, 51 (Tex.App.-San Antonio 1995, no pet.).
The subject of an involuntary civil commitment proceeding has the right to effective assistance of counsel. Lanett v. State, 750 S.W.2d 302, 306 (Tex.App.-Dallas 1988, writ denied); Ex parte Ullmann, 616 S.W.2d 278, 283 (Tex.App.-San Antonio 1981, Wit dism'd).
[2] Justice O'Connor's term of office expired December 31, 2000.