Opinion issued July 25, 2002 















In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00117-CV


____________


IN THE INTEREST OF C.B. AND V.B., MINOR CHILDREN







On Appeal from the 315th District Court

Harris County, Texas

Trial Court Cause No. 6028J





 

O P I N I O N

 Abel Perez Leija (Leija) (1) appeals the final judgment terminating his parental
rights as to C.B. and V.B., minor children. In his sole point of error, Leija argues the
evidence was legally and factually insufficient to support the trial court's implied
finding that the termination of his parental rights was in the best interest of the
children. (2)

Case Background

 On August 23, 2000, the Texas Department of Protective and Regulatory
Services (TDPRS) filed its original petition to terminate the parental rights of Angela
Lynette Bentley and Leija. On November 17, 2000, Bentley signed and filed an
irrevocable affidavit of voluntary relinquishment of parental rights. (3) Also on
November 17th, the trial court heard the case and ordered the parental rights of
Bentley and Leija to be terminated. The decree of termination was entered on
December 7, 2000. Leija timely appealed the trial court's order.

Preservation of Error

 As a threshold issue, TDPRS contends Leija waived his challenge to the
sufficiency of the evidence because he did not file a motion for new trial or a motion
for instructed verdict challenging the trial court's finding that the termination of his
rights was in the best interest of the children. See Tex. R. App. P. 33.1 (complaint on
appeal must comport with complaint made at trial court). TDPRS relies on In re
J.M.S., 43 S.W.3d 60 (Tex. App.--Houston [1st Dist.] 2001, no pet.), in support of
its argument. We held in J.M.S. that, after a jury trial, because the appellant did not
file a motion for new trial, he had not preserved his challenge to the factual
sufficiency for appellate review. Id. at 62; see also Tex. R. Civ. P. 324. 

 Rule 324 provides that, as a prerequisite for review on appeal, a motion for new
trial is not required in a jury or nonjury case, except where the appellant complains
about the factual insufficiency of the evidence to support a jury finding, or he
complains that the jury finding is against the overwhelming weight of the evidence. 
Tex. R. Civ. P. 324(a), (b)(2)-(3); see also In re Marriage of Parker, 20 S.W.3d 812,
816 (Tex. App.--Texarkana 2000, no pet.) (holding motion for new trial is not
required in nonjury case); Vannerson v. Vannerson, 857 S.W.2d 659, 677 n.8 (Tex.
App.--Houston [1st Dist.] 1993, writ denied) (same). Here, because the case was
tried to the trial court, Leija was not required to file a motion for new trial to contest
the factual sufficiency of the trial court's findings. Furthermore, when appealing
from a non-jury trial, an appellant is not required to preserve allegations of legal or
factual insufficiency. O'Farrill Avila v. Gonzalez, 974 S.W.2d 237, 248 (Tex.
App.--San Antonio 1998, pet. denied).

 Thus, we address Leija's challenge to the sufficiency of the evidence.


Sufficiency of the Evidence

 Leija only challenges the sufficiency of the evidence as to the trial court's
finding that termination of his parental rights was in the best interest of the children. 
Therefore, we do not address the trial court's findings under section 161.001(1) that
he knowingly placed or knowingly allowed the children to remain in conditions or
surroundings which endanger the physical or emotional well-being of the children,
and he engaged in conduct, or knowingly placed the children with persons who
engaged in conduct, which endanger the physical or emotional well-being of the
children.

 Leija contends the trial court's finding was improper because of the following: 
(1) the testimony of TDPRS's caseworker was cursory and conclusory; (2) there was
no evidence of the caseworker's qualifications; (3) there was no evidence as to why
placement with relatives would not be better than termination; (4) the testimony of
the guardian ad litem was conclusory; (5) there was no evidence of the guardian ad
litem's qualifications; and (6) no mental health professionals, therapists, or other
experts testified as to the best interest of the children.

 The termination of parental rights involves fundamental constitutional rights. 
Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212-13 (1972); Holick v.
Smith, 685 S.W.2d 18, 20 (Tex. 1985). To terminate parental rights, the findings
must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §
161.001 (Vernon Supp. 2002); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980); In re
K.C.M., 4 S.W.3d 392, 395 (Tex. App.--Houston [1st Dist.] 1999, pet. denied). The
clear and convincing standard of proof is intentionally placed on the party seeking the
termination of the parental rights, creating a higher burden due to the severity and
permanence of the termination of the parent-child relationship. K.C.M., 4 S.W.3d at
395; Spurlock v. Texas Dep't of Protective & Regulatory Servs., 904 S.W.2d 152, 155
(Tex. App.--Austin 1995, writ denied). This standard requires more proof than the
preponderance of the evidence standard in civil cases, but less than the reasonable
doubt standard in criminal cases. In re J.N.R., 982 S.W.2d 137, 141 (Tex.
App.--Houston [1st Dist.] 1998, no pet.). The clear and convincing standard is the
degree of proof that will produce, in the mind of the trier of fact, a "firm belief or
conviction" as to the truth of the allegations sought to be proved. K.C.M., 4 S.W.3d
at 395.

 The heightened burden of proof at trial does not affect the standard of review
on appeal. Id.; J.N.R., 982 S.W.2d at 141; see also Edwards v. Texas Dep't of
Protective and Regulatory Servs., 946 S.W.2d 130, 137 (Tex. App.--El Paso 1997,
no writ). In conducting a legal sufficiency review, we consider only the evidence and
inferences tending to support the fact finding, and we disregard all contrary evidence
and inferences. See Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996); K.C.M.,
4 S.W.3d at 395. If any evidence of probative force exists to support the finding, we
will uphold the decision. K.C.M., 4 S.W.3d at 395. Edwards, 946 S.W.2d at 137. 
In conducting a factual sufficiency review, we will sustain a factual sufficiency
challenge only if, after reviewing all the evidence, we conclude the finding is so
against the great weight and preponderance of the evidence as to be clearly wrong and
unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); K.C.M., 4 S.W.3d at 395.

 To terminate parental rights, the trial court must make two findings. K.C.M.,
4 S.W.3d at 394. First, the parent must have committed one of the acts prohibited
under section 161.001(1) of the Texas Family Code. Tex. Fam. Code Ann. §
161.001(1) (Vernon Supp. 2002); K.C.M., 4 S.W.3d at 394. Second, termination of
parental rights must be in the child's best interest. Tex. Fam. Code Ann. §
161.001(2); K.C.M., 4 S.W.3d at 394. The trial court made findings that Leija
committed acts prohibited under section 161.001(1)(D) and (E), and that termination
was in the children's best interest. The decree of termination states:

The [c]ourt finds by clear and convincing evidence that the termination
of the parent-child relationship between [Leija] and the children, [C.B.
and V.B.], is in the best interest of the children and further that [Leija]:


has knowingly placed or knowingly allowed the children to
remain in conditions or surroundings which endanger the physical
or emotional well-being of the children.


has engaged in conduct or knowingly placed the children with
persons who engaged in conduct which endangers the physical or
emotional well-being of the children.


Leija does not contest that the trial court found statutory violations, but he does
contest the finding that terminating his parental rights was in the best interest of the
children.

 "Best interest of the child" is to be determined from consideration of the
following factors: (1) the child's desires; (2) the child's physical and emotional
needs, now and in the future; (3) the emotional and physical danger to the child, now
and in the future; (4) the parental ability of the individuals seeking custody; (5) the
programs available to assist these individuals in promoting the child's best interest;
(6) the plans for the child by the individual or agency seeking custody; (7) the
stability of the home or proposed placement; (8) the parent's act or omissions that
may indicate the existing parent-child relationship is not a proper one; and (9) any
excuse for the parent's acts or omissions. Holley v. Adams, 544 S.W.2d 367, 371-72
(Tex. 1976); K.C.M., 4 S.W.3d at 395. There is a strong presumption that the best
interest of the child is served by keeping custody with the natural parent. K.C.M., 4
S.W.3d at 395. It is TDPRS's burden to rebut this presumption. Id. 

 C.B. and V.B. were born in 1997 and 1998 while Leija and Bentley were living
in Mexico with Leija's mother. Bentley testified she and Leija argued frequently and
Leija would hit, kick, and throw things at her when they argued. She testified Leija
assaulted her in front of his mother, C.B., and V.B., and he did not care whether they
saw him assault her. Bentley testified that, after she gained permission to enter the
United States with C.B. and V.B., she and the children moved to Houston, and lived
with Leija's brother. Bentley testified Leija then came to Houston, and he assaulted
her because he was jealous of her living with his brother, and that Leija's brother
never tried to stop Leija from assaulting her.

 After several months, Bentley moved in with Dalia Mendez, Leija's sister. 
Mendez testified that, although she saw Bentley and Leija fight, they never fought in
front of the children. She further testified Leija loved the children, but he was ill-tempered, and she was concerned about Leija having a drug addiction. Bentley
testified Mendez kicked her out of the house because Mendez did not want Mendez's
children to see Leija beat Bentley.

 In February 1999, Bentley and Leija moved into an apartment. Bentley
testified Leija paid little attention to the children, neglected the children when Bentley
went to work, and continued to assault her. She testified Leija slapped her, punched
her in the face with a closed fist, and choked her. Bentley testified that once when
the children were present during an assault, they became frightened, and Leija made
Bentley take off her clothes so she would not run away. Bentley, wearing only her
underwear and bra, escaped to a neighbor's house with the children.

 Leija was later convicted of twice assaulting Bentley. Bentley, however, was
also arrested because she had outstanding warrants. Because Bentley did not want
her neighbor to care for her children while she was in jail, she called TDPRS to
arrange care for the children. 

 Bentley testified that, during their relationship, Leija bragged about his
criminal history. She testified Leija sold crack cocaine since the time they met in
1994 or 1995. TDPRS also introduced into evidence records of Leija's previous
convictions for aggravated assault of a police officer, (4) evading arrest, (5) failure to
identify himself, (6) criminal mischief, (7) burglary, (8) and the two assaults of Bentley. (9)

 Karhounda Flournoy, a TDPRS caseworker, was assigned to C.B.'s and V.B.'s
case. Flournoy testified, in her opinion, Leija could not provide a safe environment
for the children because he sold drugs, he abused Bentley in front of the children, and
the children's young ages made them particularly vulnerable to Leija's behavior. 
Flournoy testified she was concerned that the children could be emotionally and
physically harmed if they stayed with Bentley and Leija, and that Leija had expressed
little willingness or ability to provide a positive environment for the children. 
Flournoy testified that, based on Bentley's testimony, her experience, and the best
interests of the children, Leija's parental rights should be terminated.

 During cross-examination, Flournoy testified that Leija suggested the children
be placed with Mendez, that the Mendez family seemed nice, that the Mendez
children would accept C.B. and V.B. into their home, but that she was afraid Mendez
would allow Leija to take C.B. and V.B. back to Mexico. She also testified that an
order terminating Leija's parental rights did not foreclose the possibility that Leija's
mother could seek custody of the children.

 Cynthia McDonald, guardian ad litem for the children and an employee of
Child Advocates, Inc., testified Leija's parental rights should be terminated because
he was abusive, and his abusive behavior caused C.B. to be fearful of adults and
created "problems" when she saw acts of violence. McDonald testified it was in the
best interest of the children that Leija's rights be terminated because Leija and
Bentley lack parenting skills, the family environment was not stable, and the children
would be subject to emotional and physical harm.

 Leija testified he loved his children, he wanted his mother or Mendez to care
for C.B. and V.B. if his rights were terminated, and both his mother and Mendez were
capable of caring for the children. Leija testified he did not intentionally hurt the
children, he worked to provide for Bentley and the children, and he wanted his family
to have the opportunity to visit the children. He testified that, even though Bentley
voluntarily relinquished her parental rights, he would allow Bentley to visit the
children at Mendez's house. He also testified that Bentley, and not he, made mistakes
in the care of the children because she started using drugs again, he had straightened
up his life, and he and Bentley argued like any other couple. Leija testified that,
because he was in jail at the time of trial, and expected to be in jail for several years,
he could not financially provide for the children.

Legal Sufficiency

 Here, the following Holley factors are relevant in determining the best interest
of the children: the present and future physical and emotional needs of the children;
the present and future emotional and physical danger to the child; the parental ability
of the individuals seeking custody; the stability of the home or proposed placement;
the parent's act or omissions that may indicate the existing parent-child relationship
is not a proper one. See Holley, 544 S.W.2d at 371-72; K.C.M., 4 S.W.3d at 394-95.

 Bentley, Flournoy, and McDonald testified the fights between Bentley and
Leija caused the children to become frightened; and, Flournoy testified the children
could be physically and emotionally harmed if they stayed with Leija and Bentley. 
McDonald testified Leija lacked the requisite parenting skills to care for C.B. and
V.B., and the home was not stable. Leija testified that he could not provide for the
children while he was in jail. Flournoy testified that she was afraid Mendez would
allow Leija to take the children to Mexico. Bentley testified Leija sold drugs, and
Mendez thought Leija had a drug addiction. 

 Considering only the evidence and inferences tending to support the trial
court's fact findings, and disregarding all contrary evidence and inferences, we
conclude that the evidence was legally sufficient to support the trial court's finding
that the termination of Leija's parental rights was in the best interest of C.B. and V.B. 
See Leitch, 935 S.W.2d at 118; Holley, 544 S.W.2d at 371. 

Factual Sufficiency

 Initially, Leija argues that, because there was no evidence regarding Flournoy's
and McDonald's qualifications, their testimony was of slight probative value. (10) 
Flournoy testified she worked for TDPRS as a caseworker, and McDonald testified
she worked for a non-profit organization and received training as part of her job. 
There was no further information about Flournoy's or McDonald's qualifications. 
The trial court, as the trier of fact, was entitled to determine the credibility and weight
to give Flournoy's and McDonald's testimony. See Nordstrom v. Nordstrom, 965
S.W.2d 575, 580 (Tex. App.--Houston [1st Dist.] 1997, pet. denied). Leija also
correctly states that no mental health professionals, therapists, or other experts
testified as to the best interests of the child. Leija, however, does not provide any
authority for the argument that the testimony of a mental health professional,
therapist, or other expert is required to prove that termination of parental rights is in
the best interest of a child.

 Leija argues Flournoy's and McDonald's testimony was cursory and
conclusory. We disagree. Both Flournoy and McDonald testified about Leija's abuse
of Bentley, the effect of the abuse on the children, Leija's inability to care for the
children because he was in jail, and the unstable living environment created by Leija
and Bentley. Three witnesses testified that termination of Leija's parental rights was
in the best interest of the children. Only Mendez's testimony that Leija and Bentley
did not argue in front of the children conflicts with the testimony of Bentley,
Flournoy, and McDonald. The trial court, as the fact finder, was free to resolve the
differences in that testimony. Id.

 Leija also argues that TDPRS presented no evidence as to why the children
should not be placed with either Leija's mother or with the Mendez family. Flournoy
testified that, although the Mendez family seemed "nice" and the Mendez children
would accept C.B. and V.B. into their home, she felt placement with the Mendez
family was not in the best interest of the children because she believed Mendez would
allow her brother to take the children to Mexico when he was released from jail. We
are also aware that neither Leija's mother nor Mendez was a party to the termination
suit and did not seek custody of the children. Furthermore, Flournoy testified that,
to her knowledge, nothing would prevent either Leija's mother or Mendez from
seeking custody of the children. We consider this testimony with Flournoy's
testimony that C.B. and V.B. were good candidates for adoption and that at least two
families were interested in adopting them at the time of the trial. Considering all of
the evidence, we conclude the trial court's finding was not so against the great weight
and preponderance of the evidence as to be clearly wrong and unjust. Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex.1996); K.C.M., 4 S.W.3d at 395. 







Conclusion

 We affirm the judgment.



 Frank C. Price

 Justice


Panel consists of Justices Hedges, Jennings, and Price. (11)

Do not publish. Tex. R. App. P. 47.
1. Leija is also known as Abel Liega Perez, Angel Perez, and Regalio Perez.
2. See Tex. Fam. Code Ann. § 161.001(2) (Vernon Supp. 2002).
3. Bentley is not a party to the appeal.
4. See Tex. Penal Code Ann. 22.02 (Vernon 1994).
5. See Tex. Penal Code Ann. 38.04 (Vernon Supp. 2002).
6. See Tex. Penal Code Ann. 38.02 (Vernon 1994).
7. See Tex. Penal Code Ann. 28.03(a)(1) (Vernon Supp. 2002).
8. See Tex. Penal Code Ann. 30.02 (Vernon Supp. 2002).
9. See Tex. Penal Code Ann. 22.01 (Vernon Supp. 2002).
10. Leija does not argue that Fluornoy's and McDonald's testimony was
improperly admitted because they were not qualified to offer opinion
testimony. 
11. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.