

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00238-CV

**IN THE INTEREST OF R.L.G.**, B.J.G., C.J.G., and K.R.G., Children

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. FL-12-341
Honorable Robert R. Barton, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  October 1, 2014

AFFIRMED

Appellant A.G. (Mother) appeals the trial court's order terminating her parental rights to her four children.  On appeal, Mother complains that the evidence is legally and factually insufficient to support the jury's statutory-endangerment and best interest findings.  We affirm the judgment of the trial court.

### BACKGROUND

Mother and Father are the parents of four young children, R.L.G., B.J.G., C.J.G., and K.R.G.  At the time of trial, the children were seven, six, four, and two years old, respectively.  In November 2011, Mother discovered that Father videotaped her teenage niece getting out of the shower and eventually asked Father to leave the home.  After Mother and Father separated, the family's living situation became unstable and the family was twice evicted from their home.  At

the time, Mother was estranged from her own family, not employed outside the home, and had very little education.[1]  Mother became overwhelmed caring for four young children and asked Father to take care of the children for a while so that she could "get on [her] feet."  Father then took the children to an emergency shelter in Kerrville, explaining that he was living in his van and had no way to care for the children.  When Mother discovered this, the children had been at the shelter for two weeks.  A week later, she went to the shelter and visited the children.  Mother agreed to go with the children to Arms of Hope, a facility where single mothers can live with their children while working on their education and parenting skills.  After spending a month there, Mother contacted the Department and asked them to take her children because she was overwhelmed.  On October 24, 2012, the Department filed a petition to terminate the parent-child relationship between Mother and her children.  While the children were in the care of the Department, Mother moved to Maine with her boyfriend, with whom she had another child, and established a home there with her boyfriend's family.  Mother wanted the children to come live with her in Maine, and worked on the services set out in her court-ordered family service plan.

After a three-day trial, the jury found by clear and convincing evidence that (1) Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being; (2) Mother engaged in conduct, or knowingly placed the children with persons who engaged in conduct, which endangered the children's physical or emotional well-being; (3) Mother failed to complete the court-ordered family service plan; and (4) termination of the parent-child relationship between Mother and the children was in the children's best interest.  The trial court entered judgment on the jury's verdict,

---

[1] Mother dropped out of school at the age of 16 and had her first child at the age of 17.

and terminated Mother's parental rights. Father voluntarily relinquished his parental rights and did not appeal the judgment terminating his parental rights.

## DISCUSSION

On appeal, Mother complains that the evidence is legally and factually insufficient to support the jury's findings regarding endangerment, failure to complete the family service plan, and best interest.

### A. Standards of Review

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1); and (2) that termination is in the best interest of the child.[2] TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d at 263; *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification of conservatorship order).

To preserve a challenge to the factual sufficiency of the evidence for appellate review, the party must file a motion for new trial in the trial court. TEX. R. CIV. P. 324(b)(2), (3); *Cecil v.*

---

[2] Only one ground under section 161.001(1) is necessary to support a judgment in a parental-rights termination case. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, when termination is based on multiple grounds under section 161.001(1), as it was here, we must affirm the termination order if the evidence is sufficient to support any one of the grounds found by the jury and the best-interest finding. *Id.*

*Smith*, 804 S.W.2d 509, 510 (Tex. 1991); *In re J.M.S.*, 43 S.W.3d 60, 62 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Mother did not file a motion for new trial. Therefore, she has waived her right to complain about the factual sufficiency of the evidence to support the jury's findings. *See In re J.M.S.*, 43 S.W.3d at 62 (holding that sufficiency issues must be properly preserved in termination of parental rights case just as in any other civil case); *see also In re A.J.L.*, 136 S.W.3d 293, 301-02 (Tex. App.—Fort Worth 2004, no pet.) (same).

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W .3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*.

### B. Endangerment

The jury determined that Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct, or knowingly placed the children with persons who engaged in conduct, which endangered their physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E). Because the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a consolidated review. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

"Endanger" means to expose to loss or injury, to jeopardize. *Tex. Dept. of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (D), it is necessary to examine evidence related to the

- 4 -

environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being. *J.T.G.*, 121 S.W.3d at 125; *see also* TEX. FAM. CODE ANN. § 161.001(1)(D). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); *see In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Illegal drug use by a parent or other caregiver likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being. *See In re S.D.*, 980 S.W.2d at 763.

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See J.T.G.*, 121 S.W.3d at 125; *see also* TEX. FAM. CODE ANN. § 161.001(1)(E). Additionally, termination under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.*, 121 S.W.3d at 125; *see* TEX. FAM. CODE ANN. § 161.001(1)(E). It is not necessary, however, that the parent's conduct be directed at the children or that the children actually suffer injury. *Boyd*, 727 S.W.2d at 533; *J.T.G.*, 121 S.W.3d at 125. The specific danger to the children's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533. A fact-finder may also infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent. *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.).

At trial, Department investigator Tiffanie Deal testified that she responded when Mother left Arms of Hope. Deal stated that despite her efforts to persuade Mother to stay with her children, Mother insisted on leaving her children in foster care. According to Deal, Mother seemed relieved once the Department agreed to place the children in foster care. Mother stated that she "didn't

have many choices" and that she "felt that that was the best choice for [her] family at the time." When Deal took possession of the children, she stated that they were "filthy" and had not been bathed in some time. The youngest had a bad diaper rash. In all other respects, the children seemed fine and were friendly.

Department caseworker Jill Peterson testified that the Department's concerns in this case pertained to Mother's "issues with drug use," "the issue with homelessness," "issues with the fact that she wasn't able to provide for [the children's care]," and her mental health issues. A journal that Mother kept during her stay at Arms of Hope was admitted into evidence. Many of the journal entries alluded to Mother's drug use and mental instability. For example:

> I said I wasn't going to quit doing drugs now, but I will try not to do pot while I'm here. Stays in my system longer. Not promising I won't do meth, though. I like that a lot.

> I don't want to be sober right now. This is what happened last to me. My moods persisted, I told ppl, but I guess I didn't let on how bad it really was, then SNAP! I don't like telling people. They really don't understand. They just see a horrible mom that wants away from her kids. I love my kids. But when too stressed, I get crazy & can't handle them. It's better for them not to be around me when I'm like this at times cuz I'm just mean & yell a lot.

> I don't want sole custody of my kids.

> I'm just here alone, wanting to die or runaway.

> Please let me be manic tomorrow, I don't wanna be this depressed. It's too exhausting & I can't make myself do anything & I cry a lot. Please be manic, please be manic, please be manic.

> I like meth more than drinking. That's probably a bad thing since I'm kinda an alcoholic at times lol. Damn addictive nature.

> I like drugs & alcohol. A lot. I screw up a lot. I'm selfish[.]

Mother testified that she had only tried meth once, prior to moving into Arms of Hope. She stated that she used marijuana several times before her children were born. After she turned her children over to the Department, she smoked marijuana every day for three weeks prior to a

court hearing. She explained her drug use by stating that she had made some mistakes and "leaned on" drugs to get her through a tough time; marijuana helped with her anxiety. She acknowledged that the boyfriend with whom she moved to Maine has a felony conviction for theft, and she was aware that he used meth a few times and went to rehab.

Mother also testified regarding her mental health issues. She stated that she had struggled with depression and anger management from a young age. She stopped taking antidepressants at age 17 when she became pregnant with her first child; she never resumed taking antidepressants. She stated that she wanted to begin taking medication for her depression again. She stated that she felt very suicidal while staying at Arms of Hope, but would not act on those thoughts.

Mother testified that she plans to move the children to Maine to live with her. She lives with her boyfriend and his mother and her fiancé, as well as their four children. Evidence was admitted regarding the boyfriend's mother's past involvement with the Connecticut equivalent of the Department; Mother's boyfriend was placed in foster care for a period when he was a child. While in Maine, Mother completed a GED program and is currently taking college courses. Her boyfriend, who is unemployed, cares for their baby while she is at school. Mother does not have a job but receives Temporary Assistance for Needy Families (TANF). If the children are returned to her, Mother plans to have them live with her at her boyfriend's mother's house. Her boyfriend will be the primary caretaker for all five children while she attends school. Eventually, Mother would like to apply for Section 8 housing and move into a separate home with her boyfriend and her children.

Mother last saw the children in June 2013 before she moved to Maine. After she moved, Mother received weekly phone visits with the children. Mother participated in one video conference with the children, but according to the children's foster mother, the visit was upsetting to the children because they really wanted to be with their mom and the new baby.

Elisa Erickson, the children's therapist, testified that she recommended that the video calls be discontinued because the children were regressing emotionally and were confused as to why they could see their mom but not visit with her. They were also confused as to why the new baby was with Mother while they were not. Erickson recommended that the three oldest children continue with therapy to assist with adjustment issues.

Alice Castleberry is a licensed psychologist who performed a psychological evaluation of Mother in April 2013. Castleberry diagnosed Mother with major depressive disorder and borderline personality disorder. She explained that a person with borderline personality disorder would have chronic instability in their relationships and in their behavior. At the time of the evaluation, Mother told Castleberry that she did not think that she could manage the four children. Castleberry stated that she had concerns about Mother's ability to raise four children given her history of instability, which could increase given the additional stress the children caused her. Castleberry did not feel that it was in the children's best interest that they be returned to Mother.

Shannon Walker, the supervising Department caseworker, testified that she was concerned with Mother's mental health history, her history of homicidal and suicidal ideations, and her history of substance abuse. She also expressed concern regarding Mother's history of a lack of coping skills and Mother's high stress level when the children are with her. She was also worried about the fact that Mother had not parented the children in almost 18 months and had not physically seen the children in over six months. Walker believed that Mother was overly optimistic about her ability to handle four children in her current situation. Walker testified that the children are currently in a foster home that is not interested in adopting the children.[3] The Department planned

---

[3] The children's foster mother testified that she is unable to adopt the children because her husband passed away.

to recruit for an adoptive placement if parental rights were terminated. Walker stated that the children did not have any special needs that would prevent them from being adopted quickly.

Although we recognize that some evidence weighs against the jury's findings under subsections 161.001(1)(D) and (E), we must give due consideration to evidence that the factfinder could have found to be clear and convincing, and we must generally leave the resolution of those conflicts to the factfinder. *See J.F.C.*, 96 S.W.3d at 266. Despite the conflicting evidence, we hold that a factfinder could have reasonably formed a firm conviction or belief that Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their emotional or physical well-being and that Mother engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being. The record before us contains evidence of Mother's drug use sufficient to support the jury's endangerment findings. *See In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied) ("A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being."). In addition, the record reflects that Mother subjected the children to a life of instability. *See In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (conduct that subjects a child to a life of uncertainty and instability may endanger the child's physical and emotional well-being); *In re S.D.*, 980 S.W.2d at 763 (same). Mother left the children with Father for three weeks, during which time Father placed the children in an emergency shelter. Approximately a month later, Mother left the children in foster care and eventually moved to Maine. The record reflects that the children were emotionally traumatized by this abandonment. *See In re S.H.A.*, 728 S.W.2d 73, 84 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (holding termination may be based on emotional endangerment only). Accordingly, we conclude that the evidence is legally sufficient to support

the jury's statutory endangerment findings. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E). We overrule Mother's first issue. We need not consider Mother's argument as to subsection 161.001(O) (failure to complete court-ordered family service plan). *See A.V.*, 113 S.W.3d at 362.

### C. Best Interest

Next, Mother argues that the evidence is legally insufficient[4] to support the jury's finding that termination of her parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2) (requiring clear and convincing evidence "that termination is in the best interest of the child"). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* TEX. FAM. CODE ANN. § 263.307(a) (West 2014).

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both the subsection (1) ground and best interest. *Id.* at 249; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

---

[4] Mother additionally complains that the evidence is factually insufficient to support the jury's best interest finding. As previously noted, because Mother did not file a motion for new trial, we are precluded from reviewing her factual sufficiency complaint on appeal. *See In re J.M.S.*, 43 S.W.3d at 62.

(9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (citations omitted); *see In re E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"). These factors are not exhaustive; some listed factors may be inapplicable to some cases. *In re C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of meager evidence relevant to each factor will not support such a finding. *Id.*

i. **Children's desires and plans for the children**

No direct evidence was admitted regarding the children's desires. When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). There was evidence that the children had been in the care of their foster mother for 18 months and were very bonded with her, but that she is not able to adopt them. There was also evidence that the children missed their mother and were upset over her moving to Maine. The Department planned to seek an adoptive placement for the children. The Department hoped to keep all four children together, but could not guarantee that would happen.

ii. **Needs of the children, Mother's parenting abilities, and stability of the home**

There was evidence of the children needing ongoing therapy to deal with the instability caused by their mother leaving them in foster care, but otherwise, they were "cute, intelligent, good children." There was significant evidence regarding Mother's instability, her history of mental health issues, and her drug use while the children were in the Department's care. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Stability is important in a child's emotional and physical development."). There were also concerns regarding

Mother's ability to handle the stress of four children in addition to her fifth child, an infant. Mother hoped to bring the children to live with her in Maine, where Mother's boyfriend would watch the children. Evidence was presented concerning Mother's boyfriend's past drug use.

### iii.   Present and future emotional and physical danger to the children

The same evidence may be probative of both section 161.001(1) grounds and best interest, although such evidence does not relieve the State of its burden to prove best interest. *See In re C.H.*, 89 S.W.3d at 28. Thus, the jury was free to consider the endangerment evidence recited above, including Mother's drug use during the pendency of the termination suit and the fact that she subjected the children to a life of instability. *See In re M.E.-M.N.*, 342 S.W.3d at 263; *In re M.R.J.M.*, 280 S.W.3d at 503. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *See In re J.D.*, 436 S.W.3d at 118.

### iv.   Availability of assistance

This factor considers whether programs are available to assist the person seeking custody in promoting the best interests of the child. The evidence at trial showed that Mother had engaged in some services aimed at regaining possession of her children. She obtained her GED and was attending college. She was sober. Mother stated that her boyfriend's family is a good support system for her and could help her with childcare and transportation. Nonetheless, the Department presented evidence that Mother had not completed the family service plan, and delayed in beginning services.

### v.   Parental acts or omissions

These factors consider acts or omissions of the parent that indicate the existing parent-child relationship is not a proper one, and any excuses therefor. *See Holley*, 544 S.W.2d at 372. The evidence raised concerns regarding Mother's mental health and prior drug use. Mother admitted

to using meth and marijuana while the children were in the Department's care, and explained that marijuana helped with her anxiety. She also conceded that she suffers from depression and should resume taking medication to treat the condition.

Mother contends that this evidence is insufficient to support the jury's best-interest finding because the children are bonded with and love her and there is no indication that they wanted termination, or that they would be better off without their mother in their lives. She contends that, at best, the evidence shows that she needed a period of time to get back on her feet, and did so by temporarily turning the children over to the Department and moving to Maine. Viewing all the evidence in the light most favorable to the judgment, however, we conclude that the jury could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2); *Holley*, 544 S.W.2d at 371-72. Accordingly, we overrule Mother's final issue.

## CONCLUSION

Having overruled Mother's issues on appeal, we affirm the trial court's order terminating Mother's parental rights to R.L.G., B.J.G., C.J.G., and K.R.G.

Rebeca C. Martinez, Justice