Opinion issued October 2, 2003



 



 










In The
Court of Appeals
For The
First District of Texas




NO. 01-00-01396-CV




IN THE INTEREST OF W.H.M., A CHILD




On Appeal from the 85th District Court
Brazos County, Texas
Trial Court Cause No. 7895-85 




MEMORANDUM OPINION 

          This appeal arises from a suit affecting the parent-child relationship, in which 
the jury found as follows: (1) appellant Elizabeth Markwardt’s parental relationship
with her son, W.H.M., should be terminated; (2) the Texas Department of Protective
and Regulatory Services (“the Department”) should be appointed as W.H.M’s
managing conservator; and (3) appellant William Markwardt, W.H.M.’s father,
should not be named possessory conservator of W.H.M. The trial court signed an
order of termination based on the jury’s findings. 
          In two points of error, Elizabeth complains that she was denied due process of
law because (1) the Department’s claims against both her and William were tried
together and both she and William were represented by the same attorney at trial,


 and
(2) the Department offered no evidence to support an instruction that accompanied
the broad-form jury question, which inquired as to the termination of Elizabeth’s
parental rights.
          In five points of error, William complains as follows: (1) legally and factually
insufficient evidence was presented to support the jury’s findings that William should
not be appointed as W.H.M.’s managing or possessory conservator; (2) “fundamental
error” occurred when William was not appointed as managing or possessory
conservator; (3) the trial court erred by failing to include a jury question in the court’s
charge requesting the jury to find whether William should be named as W.H.M.’s
managing conservator; and (4) William was denied effective assistance of trial
counsel. 
          We affirm.Factual and Procedural Background
          As a child, Elizabeth was sexually molested by her biological father. As a
result, the Department sent Elizabeth to live in a foster home where Elizabeth was
again sexually molested. Elizabeth was ultimately adopted by Frank and Brenda
Howard. The Howards divorced, and Elizabeth continued to live with her adoptive
mother, Brenda. Brenda remarried, and her new husband also sexually molested
Elizabeth. At age 13, Elizabeth went to live with her adoptive father, Frank Howard,
and his new wife, Debra. Elizabeth lived with Debra and Frank Howard until she was
almost 18 years old. Elizabeth left the Howard’s home with her boyfriend, but
returned pregnant six months later. Elizabeth gave birth to a son, J.H., on September
9, 1997. 
          In July of 1998, Elizabeth left the Howard’s home because of an argument she
had with her adoptive father. The argument was precipitated by Elizabeth slapping
a neighborhood child who was at the Howard’s home. Elizabeth and J.H. went to live
at Phoebe’s Home, a domestic shelter for women and their children. J.H. was 10
months old at the time.
          Two incidents occurred at Phoebe’s Home. The first was reported by other
residents to Beverly Mitchell, an employee of Phoebe’s Home. The residents
reported that Elizabeth masturbated J.H. in front of other children. Beverly spoke
with Elizabeth about the inappropriateness of touching J.H. in such a manner. Then,
on the afternoon of July 25, 1998, during an unannounced room check, Beverly saw
Elizabeth masturbating J.H. Elizabeth admitted to Beverly that she had masturbated
J.H. on another occasion, when he was four months old. Beverly called both the
Department and the police to report the incident.
          Around the time of the second incident at Phoebe’s Home, Elizabeth met
William Markwardt. Soon after, Elizabeth began living with William and his three
teenage daughters. In August 1998, an incident occurred at William’s home. 
William’s 15-year-old daughter claimed that Elizabeth had grabbed her breast. As
a result, William asked Elizabeth to leave his home. 
          On September 3, 1998, Elizabeth was arrested and charged with two offenses
related to her masturbation of J.H. at Phoebe’s Home: indecency with a child and
injury to a child. Shortly after, Elizabeth and William reconciled and became
engaged to be married. Having known one another only two months, William and
Elizabeth married on October 11, 1998. Shortly after she and William married,
Elizabeth became pregnant with W.H.M. 
          On February 11, 1999, the State waived the indecency with a child charge.
Elizabeth pled guilty to the remaining offense of injury to a child as charged in the
indictment. With regard to that offense, the indictment charged that Elizabeth
“intentionally and knowingly cause[d] bodily injury to [J.H.], a child younger than
15 years of age by rubbing his penis.” Following her guilty plea, Elizabeth was
placed on deferred adjudication community supervision for 10 years.


 
          As part of the conditions of her community supervision, Elizabeth was required
to attend parenting classes and to submit to psychological testing. Elizabeth was also
prohibited from attending parties, activities, or functions that have as their primary
focus children 17 years of age or younger; she was also prohibited from associating
with persons 17 years of age or younger unless in the presence of an adult.
          Elizabeth gave birth to W.H.M. on September 7, 1999. On September 10, the
Department filed a suit affecting the parent-child relationship, seeking to protect
W.H.M. The Department asserted that W.H.M. was at risk for sexual abuse by
Elizabeth. The same day, the trial court entered an ex parte order appointing the
Department as W.H.M.’s temporary sole managing conservator. W.H.M. was taken
by the Department from the hospital and placed in foster care. 
          On September 22, 1998, the trial court signed temporary orders that again
named the Department as W.H.M.’s temporary sole managing conservator. The order
provided that Elizabeth and William could have bimonthly, supervised visitation with
W.H.M. The court ordered William and Elizabeth to undergo psychological
assessments and attend parenting classes. The order further required that Elizabeth
participate in sex-offender counseling. The Department’s service plan also required
that Elizabeth and William receive psychological evaluations, participate in
counseling, and attend parenting classes. 
          The case was tried to a jury at the end of June 2000. The Department sought
to terminate Elizabeth’s parental rights on the basis that a significant risk still existed
that Elizabeth would sexually abuse W.H.M. The Department presented evidence
that Elizabeth had not made significant progress in her sex-offender counseling. In
particular, the Department presented the testimony of Dr. Rebecca Loehrer, a
psychologist and registered sex offender treatment provider, who treated Elizabeth
in the months preceding trial. 
          Dr. Loehrer testified that sex offenders are never “cured”; rather, through
treatment, sex offenders can learn to control the offending behavior by recognizing
what triggers the urge to commit a sexual offense. According to Dr. Loehrer, the first
step in the successful treatment of a sex offender is for the sex offender to
acknowledge that a problem exists and to accept responsibility for past offenses. 
Without taking this first step, a sex offender cannot learn the cycle of events that
triggers the offending behavior, and thus, prevent future offenses. 
          Dr. Loehrer testified that Elizabeth refused to acknowledge that she had a
problem and denied that she had sexually abused J.H. When Dr. Loehrer asked
Elizabeth about the offense during her treatment sessions, Elizabeth would become
angry, argumentative, and “almost hostile.” Dr. Loehrer also testified that Elizabeth
showed no remorse for her past conduct related to J.H. and showed no concern
regarding the effects that her actions may have had on the child.
          In Dr. Loehrer’s opinion, a high risk exists that Elizabeth will re-offend. Dr.
Loehrer opined that W.H.M. would be at risk for suffering serious injury if he were
returned to the Markwardt’s home. Dr. Loehrer concluded her testimony by stating
that, because of Elizabeth’s hostility, she believes that Elizabeth’s sex-offender
therapy is at a “dead end.”
          Dr. Paul Johnson, a psychologist, also testified for the Department. Dr.
Johnson performed psychological evaluations on Elizabeth and William. He stated
that his assessment showed that Elizabeth had a combination of traits found in the
following personality disorders: obsessive compulsive, histrionic, narcissistic, and
antisocial. 
          The Department also presented the testimony of Dr. Pamela Grossman, a
psychologist who, in the five months preceding trial, provided parenting classes to
Elizabeth and William. Dr. Grossman testified that she initially saw the couple as
part of a group parenting class, but, because of Elizabeth’s “mood swings” and
overreaction to criticism, Dr. Grossman then saw the Markwardts during private
sessions. 
          According to Dr. Grossman, W.H.M. would not be safe from sexual abuse if
returned to the Markwardt’s home. Dr. Grossman stated that the risk of future abuse
exists because Elizabeth refuses to admit that she sexually abused J.H. Dr. Grossman
testified that Elizabeth has made no progress toward taking responsibility for her
abuse of J.H. Rather, when Dr. Grossman spoke with Elizabeth about J.H.’s abuse,
Elizabeth became angry, defensive, and denied that J.H.’s abuse was relevant to her
treatment. Dr. Grossman also had concerns that Elizabeth’s personal needs prevented
Elizabeth from having empathy for her children. 
          Dr. Grossman stated that Elizabeth and William have a willingness to work, but
that the willingness must be tempered by progress. Although the Markwardts have
made progress in some areas, Dr. Grossman testified that she fears that future sessions
will not be beneficial because of Elizabeth’s personality disorders and her denial of
J.H.’s abuse. In Dr. Grossman’s opinion, W.H.M. should not be returned to the
Markwardts. 
          Although it initially sought to terminate William’s parental rights, the
Department conceded at trial that the evidence did not support such a finding. 
Instead, the Department asked the jury to find that the Department should be named
as W.H.M.’s managing conservator. The Department also requested the jury to find
that William should not be named as W.H.M.’s possessory conservator. 
          In support of its position, the Department presented evidence that William
denied that Elizabeth had sexually abused J.H. The Department presented evidence
that, until William acknowledged that Elizabeth was a sex offender, he could not
protect W.H.M from future sexual abuse by Elizabeth. 
          Dr. Loehrer testified that she met with William in two individual sessions, and
that William attended one “chaperone training session.” Dr. Loehrer explained that
she has a training program that teaches those close to the perpetrator to be
chaperones; that is, she teaches the non-offender how to supervise the offender when
the offender is around children. According to Dr. Loehrer, because sex offenders are
very manipulative, those close to offenders are often unaware of the offender’s
patterns, cycles, urges, and arousal around children. The chaperone must understand
these issues before being approved to supervise the sex offender.
          Dr. Loehrer stated that William could not be approved to be Elizabeth’s
chaperone. Dr. Loehrer again reiterated that the offender must first admit to the past
offenses. Dr. Loehrer stressed it is critical for the chaperone to also acknowledge that
the offender committed the offense. Unless the chaperone admits that the perpetrator
committed the offense, the chaperone will not recognize the warning signs preceding
an offense. Dr. Loehrer stated that William told her several times that he did not
believe that Elizabeth had molested J.H. Thus, William could not be an approved
chaperone for Elizabeth.
          Dr. Johnson testified that his psychological assessment of William showed that
William possessed the following personality traits: paranoid, compulsive, and sadistic
features. Dr. Johnson stated that a sadistic personality feature means that the person
lacks empathy for others who are suffering pain, and may even find some enjoyment
in the pain of others. Dr. Johnson stated that he does not see the sadistic trait very
often in his practice, and that it is fairly rare. 
          Dr. Johnson also testified that William told him that he did not believe that
Elizabeth had molested J.H. Because William denied that Elizabeth had molested
J.H., Dr. Johnson was concerned that William could not protect W.H.M. from
Elizabeth. Dr. Johnson believed that W.H.M. would be at risk if he were placed with
the Markwardts. 
          Dr. Grossman testified that she believed that W.H.M. would not be safe with
the Markwardts because William continued to defend Elizabeth and deny that she had
sexually abused J.H.. Dr. Grossman expressed concern that William could not protect
W.H.M. from Elizabeth. 
          Evidence was also presented at trial that William’s three daughters from his
first marriage had each been sexually molested by three different perpetrators at three
different times. William did not become aware of the molestations until years after
they occurred. The Department used this evidence to further bolster its argument that
William would not adequately protect W.H.M. from future sexual abuse. In addition,
the Department argued that the evidence showing that William had allowed Elizabeth
to return to his home after one of his teenage daughters had accused Elizabeth of
grabbing her breast, also indicates that William will not protect W.H.M. from
Elizabeth.
          The Department also presented testimony that Elizabeth and William attended
a family birthday party at which children were present after Elizabeth pled guilty to
injury to a child. The evidence showed that William knew that Elizabeth’s attendance
at the party violated the terms and conditions of her probation. 
          After hearing the evidence, the jury found that (1) the parent-child relationship
between Elizabeth and W.H.M. should be terminated, (2) the Department should be
named as W.H.M.’s managing conservator, and (3) William should not be named as
W.H.M.’s possessory conservator. In accordance with these findings, the trial court
signed an order of termination. Both Elizabeth and William appealed.
Discussion
A.      Elizabeth’s Appeal
          1.       Right to Separate Trials and Trial Counsel
          In her first point of error, Elizabeth complains that she was denied due process
of law because the Department’s claims against her and William were tried together
and because she and William were represented by the same attorney at trial. 
However, Elizabeth did not raise these complaints in the trial court. 
          To preserve a complaint for appellate review, a party must first demonstrate
that the complaint was made to the trial court by a timely request, objection, or
motion. Tex. R. App. P. 33.1(a). This rule also applies to the preservation of a
constitutional claim of denial of due process. See Dreyer v. Greene, 871 S.W.2d 697,
698 (Tex. 1993); Segovia v. Texas Dep’t. of Protective and Regulatory Serv., 979
S.W.2d 785, 788 (Tex. App.—Houston [14th Dist.] 1998, pet denied). 
          By failing to bring her complaint to the trial court’s attention and obtain a
ruling, Elizabeth has failed to preserve this issue for our consideration. Thus, any
error is waived. Tex. R. App. P. 33.1(a); cf. In re B.L.D. and B.R.D., 46 Tex. Sup. Ct.
J. 978, 980-81 (July 3, 2003) (holding that motion in trial court to “sever” cases due
to attorney’s conflict of interest in representing both parents preserved complaint that
they were harmed by joint representation of counsel during same trial in termination
of parental-rights case). 
          We overrule Elizabeth’s first point of error.
          2.       Jury Charge Error
          In her second point of error, Elizabeth contends that her due process rights
were violated because the Department offered no evidence to support the submission
of an instruction accompanying the broad-form jury question that inquired as to the
termination of Elizabeth’s parental rights. 
          The relevant portion of the charge stated as follows:
For the parent-child relationship in this case to be terminated with
respect to Elizabeth Howard Markwardt, the mother of the child
[W.H.M.,] it must be proven by clear and convincing evidence that at
least one of the following events has occurred:
 
. . .
 
Elizabeth Markwardt has been placed on community supervision,
including deferred adjudication community supervision, for being
criminally responsible for the serious injury of a child under Penal Code
section 22.04 (injury to a child).
          Elizabeth contends that the submission of this instruction was not warranted
because the Department presented no evidence that she was responsible for a “serious
injury of a child.” Whether we construe this point of error as one complaining of
charge error or as one complaining of the legal sufficiency of the evidence, Elizabeth
has failed to preserve error on this point. 
          Our procedural rules state that any complaint to a jury charge is waived unless
specifically included in an objection. Tex. R. Civ. P. 274; Tex. R. App. P. 33.1(a)(1). 
A party must make the trial court aware of the complaint, timely and plainly, and
obtain a ruling. State Dep’t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235,
241 (Tex. 1992). Our supreme court has recently held that due process does not
mandate that appellate courts review unpreserved complaints of charge error in
termination of parental rights cases. B.L.D., 46 Tex. Sup. Ct. J. at 987. Here,
Elizabeth failed to object, or otherwise alert the trial court to the complaint she now
raises on appeal, that the instruction was not supported by the evidence presented at
trial. Thus, Elizabeth’s complaint regarding charge error is waived. Tex. R. App. P.
33.1(a)(1).
          To the extent that Elizabeth complains of the legal sufficiency of the evidence,
she also has failed to preserve error. To properly preserve a legal sufficiency
challenge for appeal after a jury trial, an appellant must do one of the following: (1)
move for an instructed verdict; (2) move for judgment notwithstanding the verdict; 
(3) object to the submission of a jury question; (4) move to disregard the jury finding; 
or (5) move for a new trial. Cecil v. Smith, 804 S.W.2d 509, 510-11 (Tex. 1991); In
re J.M.S., 43 S.W.3d 60, 62 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Although
Elizabeth filed a motion for new trial, she did not argue in the motion that no
evidence existed to support the submission of the jury instruction. Therefore,
Elizabeth failed to preserve her legal sufficiency challenge. See U.S.A. Precision
Machining Co. v. Marshall, 95 S.W.3d 407, 412 (Tex. App.—Houston [1st Dist.]
2002, pet. denied) (holding appellant waived its legal sufficiency challenge that no
evidence was presented showing enforceable agreement existed between parties
because it failed to raise this ground in either of its post-trial motions); Cal-Tex
Lumber Co., Inc. v. Owens Handle Co., Inc., 989 S.W.2d 802, 810-11 (Tex.
App.—Tyler 1999, no pet.) (holding appellant waived its legal sufficiency challenge
to jury’s finding that it breached contract because it failed to argue specifically in its
motion for new trial that there was no evidence to show it had ability to perform
obligations of contract).
          Because the record does not show Elizabeth’s complaints were presented to the
trial court, this issue presents nothing for review. Tex. R. App. P. 33.1(a)(1).
          We overrule Elizabeth’s second point of error.
 
 
B.      William’s Appeal
          1.       Legal Sufficiency of the Evidence 
          In his first issue, William complains that the evidence was insufficient to
support the jury’s findings that he should not be appointed as W.H.M.’s managing or
possessory conservator. 
          As previously stated, to preserve a legal sufficiency challenge, a party must
have specifically raised its complaint in an objection to the submission of a jury
question, a motion for judgment notwithstanding the verdict, or a motion for new
trial. Cecil, 804 S.W.2d at 510-11; J.M.S., 43 S.W.3d at 62. Here, William (and
Elizabeth) filed a motion for new trial, asserting, in part, as follows: “The court
should grant a new trial because the jury’s answer to questions 1, 2, 3, and 4 are
against the great weight and preponderance of the evidence and is [sic] manifestly
unjust.” However, William failed to alert the trial court to the contentions he raises
on appeal; namely, that no evidence was presented to overcome the “parental
presumption,” or to support the jury’s findings that William’s appointment as a
managing conservator would significantly impair W.H.M.’s physical health or
emotional development, and (2) that William’s appointment as possessory
conservator would endanger W.H.M.’s physical or emotional welfare. Thus,
William’s legal-sufficiency challenge is waived. Tex. R. App. P. 33.1(a)(1).
          We overrule William’s first issue.
          2.       Factual Sufficiency
          In issue two, William complains that the evidence was factually insufficient to
support the jury’s findings that William should not be appointed as W.H.M.’s
managing or possessory conservator. 
                    a.       Burden of proof and standard of review
          The jury’s findings regarding whether William should be appointed as
W.H.M.’s managing or possessory conservatorship had to be supported by a
preponderance of the evidence. Tex. Fam. Code Ann. § 105.005 (Vernon 2002); cf.
id. § 161.001 (Vernon 2002) (stating evidence supporting findings in termination
proceedings must be clear and convincing). In light of this burden of proof, we apply
the usual standard of review in determining whether the evidence presented was
factually sufficient to support the verdict. That is, we must consider and weigh all the
evidence, and should set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986).
                    b.       Law of Conservatorship
          The presumption that the best interest of a child is served by awarding custody
to a natural parent is deeply embedded in Texas law. Lewelling v. Lewelling, 796
S.W.2d 164, 166 (Tex. 1990); Mumma v. Aguirre, 364 S.W.2d 220, 221 (Tex. 1963). 
That presumption is codified in the Family Code, which sets forth a rebuttable
presumption that a child’s best interest is served by naming the child’s parent or
parents as managing conservators.


 Id. 153.131(b) (Vernon 2002). This parental
presumption imposes a heavy burden on a non-parent seeking conservatorship. See
In re W.G.W, 812 S.W.2d 409, 413 (Tex. App.—Houston [1st Dist.] 1991, no writ). 
          In light of this presumption, Family Code subsection 153.131(a) mandates that
a parent must be appointed sole managing conservator or joint managing conservator
unless the trial court finds that appointment of the parent would not be in the best
interest of the child because the appointment would significantly impair the child’s
physical health or emotional development. Id. § 153.131(a) (Vernon 2002). The
Family Code also provides that a parent who is not appointed as a sole or joint
managing conservator must be appointed as a possessory conservator unless the court
finds that the appointment is not in the best interest of the child and that parental
possession or access would endanger the physical or emotional welfare of the child. 
Tex. Fam. Code Ann. § 153.191 (Vernon 2002). In this case, the jury was charged
on the standards enunciated in subsection 153.131(a) and section 153.191.
          When a non-parent seeks managing conservatorship of a child, the non-parent
must “prove by a preponderance of credible evidence that awarding custody to the
parent would result in serious physical or emotional harm to the child.” In re R.D.Y.,
51 S.W.3d 314, 321 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (quoting In
re M.W., 959 S.W.2d 661, 665 (Tex. App.—Tyler 1997, writ denied)). Evidence of
specific, identifiable behavior that the parent will cause harm to the child must be
presented. R.D.Y., 51 S.W.3d at 321. Absent such specific evidence, general
evidence that a non-parent would be a better custodian of the child is inadequate to
rebut the parental presumption. Id. (citing W.G.W., 812 S.W.2d at 413). Unlike a
termination of parental rights case, in which the focus of the inquiry is on the
behavior of the parent, the focus in determining issues of conservatorship, is on the
child. See In re Rodriguez, 940 S.W.2d 265, 270-71 (Tex. App.—San Antonio 1997,
writ denied).
          It is also relevant to our analysis of this issue to note that the Family Code
provides that a jury’s custody determination is binding on the trial court if it is
supported by the evidence. Id. § 105.002(d) (Vernon 2002); Rodriguez, 940 S.W.2d
at 272. In conducting our factual sufficiency review, we are mindful that the jury is
the sole judge of the credibility of the witnesses and the weight to be given their
testimony. Jones v. Tarrant Util. Co., 638 S.W.2d 862, 866 (Tex. 1982). The trier
of fact may resolve conflicts and inconsistencies in the testimony of any one witness
as well as the testimony of different witnesses. Webb v. Jorns, 488 S.W.2d 407, 411
(Tex. 1972). As this Court has noted on many occasions, we cannot substitute our
judgment or opinion for that of the jury. Lofton v. Tex. Brine Corp., 720 S.W.2d 804,
805 (Tex. 1986). With these principles in mind, we turn to the specific arguments
presented by William in his second issue. 
                    c.       Impairment or endangerment of W.H.M.’s physical health or 
                              emotional development

          William first contends that the evidence was factually insufficient to support
the jury’s implied findings that (1) appointing William as W.H.M.’s managing
conservator would significantly impair W.H.M.’s physical health or emotional
development, and that (2) allowing William possession or access to W.H.M. would
endanger W.H.M.’s physical or emotional welfare.


 
          In support of his factual sufficiency challenge, William cites to the following
facts that were shown by the evidence at trial:
          •        William never abused nor was alleged to have abused W.H.M.
 
          •        William has no criminal history.
 
          •        William has completed the requirements of the Department service plan.
 
          •        Other than the psychological assessment, the Department did not
provide William individual services.
 
          •        On his own volition, William attended counseling and parenting classes
with Elizabeth.
 
          •        William ensured that Elizabeth completed the terms of the Department’s
service plan.
 
          •        William paid child support for W.H.M. while the case was pending.
 
          •        William and Elizabeth attended, and never missed, a scheduled visit
with W.H.M.
 
          •        Numerous witnesses described William as a warm, caring, and loving
father to W.H.M. and his three daughters, and as a warm, caring, and
loving stepfather to J.H.
 
          •        William brought stability to Elizabeth’s life, and helped her to receive
counseling for her own childhood sexual abuse.



          In his appellate brief, William writes as follows with regard to the above:
All of this evidence, combined with the presumption that the best
interest of the child is served by keeping custody in [sic] the natural
parents, shows that William’s appointment would not significantly
impair [W.H.M.’s] physical health or emotional development.

We do not agree. 
          Undeniably, the evidence cited by William weighs in favor of a verdict naming
him as W.H.M.’s managing or possessory conservator. However, the evidence that
is favorable to William must be viewed in the context of the entire record and not in
isolation. As set forth in the background section of this opinion, the Department
presented evidence from which the jury could have reasonably inferred that a high
risk exists that if W.H.M. is returned to the Markwardt home he will be sexually
molested by Elizabeth. The Department presented evidence that, due to Elizabeth’s
denial of her past offense and lack of progress in therapy, she will likely sexually
molest another child. The Department also presented evidence that William would
likely fail to protect W.H.M. from Elizabeth. Specifically, the Department presented
evidence that (1) William’s denial of Elizabeth’s past offense will enable Elizabeth
to molest W.H.M. should she have the opportunity; (2) William’s three daughters had
each been molested on separate occasions, and William had been unaware of the
molestations until years later; and (3) William allowed Elizabeth to return to his home
and live with him and his daughters after one of his teenage daughters accused
Elizabeth of grabbing her breast. 
          William claims that the only testimony supporting the jury’s implied findings
that William’s appointment would endanger W.H.M.’s physical health or emotional
development came from Gwen Gray, an employee of the Department. William
attacks Gray’s testimony that W.H.M. may suffer emotionally if William is granted
visitation of the child. Gray explained that the child would be aware of the stigma
associated with the reason for his removal from his parents. But this is not the
evidence on which the Department based its prosecutorial theory. As previously
stated, the Department presented evidence showing that a high likelihood exists that
William will fail to protect W.H.M. from Elizabeth. In sum, William fails to argue
how the evidence relied on by the Department is deficient.
          Moreover, in support of his factual sufficiency challenge, William also fails to
cite any evidence that contradicts the Department’s evidence that he will fail to
protect W.H.M. That is, William does not point us to any evidence in the record that
indicates how he would prevent W.H.M. from being molested by Elizabeth. 
          Viewing the evidence as we must, we conclude that the jury’s implied findings
that appointing William as W.H.M.’s managing conservator would significantly
impair W.H.M.’s physical health or emotional development, and that (2) allowing
William possession or access to W.H.M. would endanger W.H.M.’s physical or
emotional welfare, were not so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust.
                    d.       W.H.M.’s best interest
          As part of issue two, William also challenges the factual sufficiency of the
evidence to support the jury’s implied finding that appointment of William as
W.H.M.’s possessory conservator was not in W.H.M.’s best interest.
          Some of the factors an appellate court may consider in ascertaining the best
interest of a child include the non-exhaustive list set forth in Holley v. Adams. 544
S.W.2d 367, 371-72 (Tex. 1976). Those factors include the following: (1) the desires
of the child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs available to
assist these individuals to promote the best interest of the child; (6) the plans for the
child by these individuals or by the agency seeking custody; (7) the stability of the
home or proposed placement; (8) the acts or omissions of the parent which may
indicate that the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parent. Id. at 371-72. 
          These factors are not exhaustive. In re C.H., 89 S.W.3d 17, 27 (Tex. 2002). 
The absence of evidence about some of these factors does not preclude a factfinder
from reasonably forming a strong conviction or belief that termination is in the child’s
best interest. Id. The supreme court has stated that, in parental-rights termination
cases, undisputed evidence of just one factor may be sufficient in a particular case to
support a finding that termination is in the best interest of the children. Id. 
          William cites the following as support for his contention that the evidence was
not factually sufficient to support the jury’s implied finding that it was not in
W.H.M.’s best interest to appoint William as the child’s possessory conservator:
          •        During William’s visitations with W.H.M., the child interacted with
William and the two appeared to have bonded.
 
          •        No evidence was presented that W.H.M. has special needs. William has
demonstrated that he can meet the normal childhood needs of W.H.M.
through the attendance of parenting classes, the physical provisions of
William’s home, William’s employment, and William’s caring
relationship with his son. 
 
          •        The evidence showed that W.H.M. was at risk for future sexual abuse
related to the conduct of Elizabeth, not William. No evidence was
presented that William engaged in acts or omissions that were at issue
in this case.
 
          •        Numerous witnesses described William as a caring, warm, and loving
father.
 
          •        If William were appointed as W.H.M.’s possessory conservator, the
Department would continue to provide parenting resources to William
such as counseling and parenting classes. The Department would also
perform unannounced home visits.
 
          •        William expressed long-term plans for W.H.M.’s future.
 
          •        William has a stable home-life and has brought stability to Elizabeth’s
life.

          Undeniably, some evidence exists in the record that weighs in favor of William
under the Holley factors. The record contains evidence that shows William loves
W.H.M., has taken steps since W.H.M.’s birth to be a good parent, and is a good
provider for his family. However, as mentioned above, evidence cannot be read in
isolation; it must be read in the context of the entire record. As discussed, the record
contains evidence from which the jury could reasonably infer that William would not
protect W.H.M. from sexual abuse by Elizabeth. Such risk is particularly relevant to
the emotional and physical danger W.H.M. would face if William were named as
either managing or possessory conservator. The second and seventh Holley
factors—the emotional and physical needs of the child and the stability of the
home—are also implicated by such evidence. 
          We also note that Gwen Gray, the Department’s program director, testified that
the Department would seek permanent, long-term foster care placement for W.H.M. 
Gray testified that the Department has not had difficulty finding long-term placement
in similar cases. Gray also stated that continued visitation by the biological parents
makes long-term placement more difficult and adversely affects the child’s stability.
          Gray further testified that W.H.M. was doing well in his current foster
placement. William also testified that he thought the foster parents were taking good
care of W.H.M.
          Viewing the evidence as we must, we conclude that the jury’s implied finding
that appointing William as W.H.M.’s possessory conservator is not in W.H.M.’s best
interest is not so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. 
          We hold that the evidence was factually sufficient to support the jury’s findings
that William should not be appointed as W.H.M.’s managing or possessory
conservator. We overrule William’s second issue.
          3.       Fundamental Error
          In his third issue, William complains that the trial court’s order appointing the
Department as W.H.M.’s managing conservator and denying William possessory
conservatorship amounts to a de facto termination of his parental rights. William
argues that his parental rights were terminated even though the Department did not
seek termination. William contends that such de facto termination implicates
constitutional protections and constitutes “fundamental error.” Although not
explicitly stated, William appears to argue that his due process rights were violated. 
          Because William failed to raise his due process complaint in the trial court, he
has failed to preserve this issue for our consideration. Tex. R. App. P. 33.1(a). As
previously mentioned, a constitutional challenge not raised properly in the trial court
is waived on appeal. See Dreyer, 871 S.W.2d at 698; Segovia, 979 S.W.2d at 788. 
To the extent that William argues that he did not need to preserve this issue because
it was fundamental error, we note that our supreme court has recently held that the
“fundamental error doctrine,” which allows an appellate court to review error that was
neither raised in the trial court nor assigned, does not apply in parental-rights
termination cases. B.L.D., 46 Tex. Sup. Ct. J. at 985. Accordingly, the doctrine
would not apply to a claim of de facto termination of parental rights. 
          We overrule William’s third issue.
          4.       Preservation of Jury Charge Error
          In his fourth issue, William complains that the trial court erred because it failed
to include a question in the jury charge asking the jury to find whether William
should be named as W.H.M.’s managing conservator. 
          Because William failed to object to the jury charge on this basis in the trial
court, this complaint is waived on appeal. Tex. R. Civ. P. 274; Tex. R. App. P.
33.1(a)(1); see also B.L.D., 46 Tex. Sup. Ct. J. at 987. 
          We overrule William’s fourth issue.
          5.       Ineffective Assistance of Counsel
          In his fifth issue, William complains that he was provided ineffective assistance
of trial counsel. Our supreme court has recently held that the statutory right to
counsel in parental-rights termination cases embodies the right to effective counsel. 
In re M.S., 46 Tex. Sup. Ct. J. 999, 1006 (July 3, 2003). 
          Although it initially sought to terminate William’s parental rights, the
Department did not seek, and the jury did not find at trial, that William’s parental
rights should be terminated. The case tried to the jury with regard to William was one
of conservatorship, not termination; thus, the right of effective assistance of counsel
does not extend to William. See Liva v. Liva, 04-96-00143-CV, at * 1, 1997 WL
602884 (Tex. App.—San Antonio Oct. 1, 1997, no pet.) (not designated for
publication) (holding mother not entitled to ineffective assistance counsel claim in
case in which mother appointed as possessory conservator and father given managing
conservatorship of children); see also Stokes v. Puckett, 972 S.W.2d 921, 927 (Tex.
App.—Beaumont 1998, pet. denied) (holding doctrine of ineffective assistance of
counsel does not extend to civil suits).
          We overrule William’s fifth issue.
Conclusion
          We affirm the trial court’s order of termination.
 
 
Laura Carter Higley
                                                             Justice
 
Panel consists of Justices Hedges, Nuchia, and Higley.