In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00179-CV
_____

IN THE INTEREST OF C.A.D.

On Appeal from the County Court at Law
Polk County, Texas
Trial Cause No. CIV30779

**MEMORANDUM OPINION**

This is an appeal from a jury's verdict in which the jury decided to terminate "Mother's" and "Father's" rights to their daughter, "Claire."[1] The jury's answers to the controlling issues are based on three statutory grounds under which courts may render a judgment that terminates the rights parents otherwise have to parent their child. Here, the jury found that the rights of Claire's parents should be terminated

---

[1] We protect the identity of the minor affected by the trial court's ruling by using a pseudonym for her name and for the names of her relatives. *See* Tex. R. App. P. 9.8.

1

because they (1) knowingly placed or knowingly allowed Claire to remain in conditions or surroundings which endanger her physical or emotional well-being, (2) engaged in conduct or knowingly placed Claire with persons who engaged in conduct that endangered her physical or emotional well-being, and (3) that Claire's parents, respectively, each have a mental or emotional illness or mental deficiency that makes that parent unable to provide for Claire's needs. *See* Tex. Fam. Code. Ann. §§ 161.001(b)(1)(D), (E), 161.003(a)(1), (2) (West Supp. 2017).

In five issues, Mother and Father filed separate appeals challenging the trial court's judgment. In issues one through three, Mother and Father argue that the evidence admitted during the trial does not support the jury's findings that their rights should be terminated. In issue four, Mother and Father contend the evidence does not support the jury's findings that terminating their respective parental rights is in Claire's best interest. In their fifth issue, Mother and Father argue that they each received ineffective assistance of counsel during the trial. For the reasons explained below, we affirm.

## Background

Mother and Father moved to Polk County, Texas from Georgia in late 2016. When Claire's parents moved to Texas, they were the parents of an infant son, "Ian," but they did not bring him with them when they moved. In early 2018, the State of

2

Georgia terminated their parental rights to Ian because they had not properly cared for his needs. Claire was born in November 2016, around five months after Mother and Father moved to Texas.

Mother and Father testified during the trial. They explained that they receive social security disability benefits, and they acknowledged that the benefits were based in part on their respective learning disabilities.[2] The evidence shows that together, Mother and Father receive government benefits of about $1500 a month. The evidence the jury considered established that when Claire was born, Mother and Father were living in an apartment in Polk County. Shortly after Claire's birth, her parents moved from their apartment into a house that had no utilities. After Claire's parents moved into the house, they agreed to let Claire stay with Father's sister-in-law, "Rebecca," who the evidence shows also lives in Polk County.[3] Father testified that under his arrangement with Rebecca, Rebecca was to care for Claire until he

---

[2] Father testified that he could read and write "a little," and that he could do math at an eighth-grade level. Mother testified that she is a "slow learner" and that she attended high school in a special education program, graduating from high school after completing the program.

[3] In late December 2016, Mother and Father signed a voluntary authorization that allowed Rebecca to assume some of Mother's and Father's responsibilities to care for Claire. The authorization reflects that Mother and Father signed it before a notary public.

could arrange to have the utilities reconnected to the house. According to Rebecca, who testified in the trial, about one or two months after Claire began living with her, Father's adult son "Brian" told her that she should "keep an eye on [Father]" because he had seen "[Father] touch that baby." Rebecca explained that after Brian warned her to watch Father's conduct around Claire, she observed that while Father was changing Claire's diaper he "had his finger on [Claire's] private part." Rebecca testified that she demanded that Mother and Father leave her house right after she saw Father engage in inappropriate conduct that he directed at Claire; from that point, Rebecca refused to allow them to see Claire again.

Shortly after Rebecca saw Father engage in what she considered inappropriate sexual conduct toward Claire, Rebecca filed a suit asking that the trial court appoint her to be Claire's conservator. In late April 2017, the trial court appointed the Department of Family and Protective Services as Claire's temporary sole managing conservator. Several days after the Department removed Claire from Rebecca's home, Rebecca intervened into the proceedings filed by the Department. She asked the trial court to name her as Claire's joint-managing conservator.[4] In March 2018,

---

[4] Rebecca's petition in intervention names two intervenors, Rebecca and her step-daughter, who is also Claire's biological cousin. *See* Tex. Fam. Code Ann. § 102.004(a), (b) (West Supp. 2017). The step-daughter named in the petition did not testify during the trial.

the trial court called the termination case to trial. When the trial ended, the issues the jury answered authorized the court to render a judgment terminating Mother's and Father's parental rights. Thereafter, Father's attorney filed a post-judgment motion challenging the sufficiency of the evidence to support the jury's findings; however, Mother's attorney did not do so.

Analysis

I.      Legal and Factual Sufficiency of the Evidence and Best-Interest Finding

A. Standard of Review

In issues one through three, Mother and Father contend the evidence is legally and factually insufficient to show that they (1) knowingly placed or knowingly allowed Claire to remain in conditions or surroundings which endangered her physical or emotional well-being, (2) engaged in conduct or knowingly placed Claire with persons who engaged in conduct that endangered her well-being, or (3) have mental or emotional illnesses, or a mental deficiency that leaves them unable to provide for Claire's physical, emotional, and mental needs. In their respective briefs, Mother and Father challenge the sufficiency of the evidence proving each of the findings the jury made that authorized the termination of their parental rights.

Before addressing the merits of Mother's and Father's arguments, we note the standard of review that applies to reviewing issues asserted in appeals claiming that

insufficient evidence supports the factfinder's rulings on the controlling issue. In conducting a legal sufficiency review, we review all the evidence in the light that favors the findings to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the jury resolved disputed facts in a way that favors its findings if a reasonable jury could have done so based on the evidence before the jury in the trial. *See id.* We also disregard all evidence that the jury could have reasonably disbelieved. *Id.* Nonetheless, an appellate court may overturn the jury's verdict if the evidence admitted in the trial reveals that no reasonable jury could have formed a firm belief or conviction that any of the jury's findings authorizing a judgment terminating a parent's rights are supported by the evidence the jury considered in the trial. *Id.*

When conducting a factual sufficiency review, we determine whether the evidence before the jury allowed it to form a firm belief or conviction on the findings being challenged in the appeal. *Id.* In reviewing the evidence, we consider evidence that the jury could have reasonably found to be clear and convincing. *Id.* And we consider whether the disputed evidence is such that a jury could not have resolved the disputed issue in favor of the finding the jury made. *Id.* If, given the entire record, clear and convincing evidence does not support the decisions the jury made on

controlling issues, the court must find the evidence is factually insufficient to support the challenged findings.

A jury's verdict in a parental-termination case must be supported by clear and convincing evidence, that is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *see also In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). In Claire's case, the Department needed to secure favorable findings on one or more of the grounds on which the Legislature authorized the courts to terminate a parent's rights and to secure a favorable finding that the termination of their respective rights is in Claire's best interest. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2017); *see also J.L.*, 163 S.W.3d at 84. On appeal, if the record contains legally and factually sufficient evidence to support the jury's best-interest finding and to support the jury's finding on any one of the predicate grounds needed to justify terminating the parent-child relationship, the judgment terminating the parent's rights will be affirmed. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

### B. Evidence Supporting Endangerment Finding—Father

The judgment terminating Father's parental rights rests on three of the predicate grounds that authorize a court to terminate the parent-child relationship.

7

*See* Tex. Fam. Code. Ann. §§ 161.001(b)(1)(D), (E), 161.003(a)(1), (2). To justify reversing the jury's verdict, Father must establish that insufficient evidence supports all three of the issues the jury answered on the predicate findings they are challenging in their appeals, or they must show that the evidence does not support the jury's finding on the best-interest issue.

Consequently, Father must establish that insufficient evidence supports the jury verdict on the endangerment finding the jury made under section 161.001(b)(1)(E) of the Family Code. If he cannot do so, his complaints about the jury's other two predicate findings under sections 161.001(b)(1)(D) and 161.003(a)(1) need not be reached. *See A.V.*, 113 S.W.3d at 362 (noting that when coupled with a best-interest finding, only one predicate statutorily-based finding is needed to authorize a judgment terminating the parent-child relationship); *see also* Tex. R. App. P. 47.1 (noting that the appellate court's opinion must address the issues that are necessary to dispose of the appeal).

For convenience, we address Father's challenge to the jury's finding under section 161.001(b)(1)(E) ("subsection E") of the Texas Family Code that he "engaged in conduct…which endangers the physical or emotional well-being of the child" before addressing his arguments about the jury's findings on other issues. "In considering whether the evidence is legally sufficient to support a finding of

8

endangerment, we must determine whether there was 'some evidence of endangerment on which a reasonable factfinder could have formed a firm belief or conviction of endangerment.'" *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012) (quoting *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)). As to the jury's findings under subsection E, the conduct that Rebecca and Brian described seeing Father engage in when changing Claire's diapers is conduct the jury could have reasonably viewed as revealing that Father has an abnormal sexual interest in his child. During the trial, Rebecca and Brian testified that they saw Father touch Claire's sexual organ in ways they considered inappropriate. Rebecca testified that she saw Father, on one occasion, put his finger on Claire's sexual organ while Mother, Father, and Claire were all sitting in the same room of her home. Rebecca, who the record shows is a retired nurse, explained that what she saw was inappropriate even though she knew Father was changing Claire's diaper. Father argues the jury should have disbelieved Rebecca's testimony because she wanted to "steal [Claire]" from them.

Brian's testimony about what he saw concerns incidents that differ from the one that Rebecca described, as he was not in the room when Father engaged in the conduct that Rebecca described. According to Brian, he saw Father touch Claire on her private parts "more than once" while changing Claire's diaper. Brian acknowledged that when someone changes a baby's diapers, they are going to be

9

around a child's sexual organ. Yet Brian described seeing Father rubbing Claire's sexual organ: he testified that Father "kept rubbing [Claire's] private parts more than once." Father fails to point to any evidence that shows why the jury should have disbelieved Brian's account about what he saw Father do to Claire.

The jury could have reasonably considered that the conduct that Rebecca and Brian described seeing endangered Claire's physical and her emotional well-being. *See In re L.C.*, 145 S.W.3d 790, 796 (Tex. App.—Texarkana 2004, no pet.) (citing *In re A.B.*, 125 S.W.3d 769, 775 (Tex. App.—Texarkana 2003, pet. denied)). That said, no one testified during the trial that Claire suffered a physical injury from the incidents that Rebecca and Brian described. Yet the lack of evidence showing that a parent caused a child to suffer a physical injury need not mean that the conduct described by the witnesses did not endanger the child. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (noting that the term *endanger*, as used in the involuntary-termination statute, means to expose the child to loss or injury, or to jeopardize the child). Even if a parent's conduct caused no physical injury, the parent's conduct may still expose the child to danger. *Id*. The evidence of the endangerment that Rebecca and Brian described reveals that more than an abstract possibility exists that Claire would suffer a physical or emotional injury, so their testimony does not merely show that Claire had been in "a less-than-ideal family

10

environment[.]" *Id.* (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)).

In a jury trial, the jury has the responsibility to decide whether a witness is telling the truth and to weigh how important a witness's testimony is to the facts that are in dispute. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Generally, juries may believe or disbelieve any of the testimony the trial court admits into evidence in the trial. *Id.* When the jury's decision reveals that the choices the jury made were reasonable, the reviewing court may not substitute its judgment about who should have been believed for the decisions made on those matters by the jury. *Id.* at 813-14 (explaining that a reviewing court cannot view evidence that contradicts the verdict in isolation). When the parties ask a jury to consider conflicting testimony, the jurors must often choose between opposing inferences and may do so if the inferences the jury drew from the testimony were reasonable. *See Lozano v. Lozano*, 52 S.W.3d 141, 158 (Tex. 2001) (Hecht, J., concurring and dissenting).

Having carefully considered all the evidence admitted in the trial, we conclude the jury could have reasonably formed a firm belief or conviction that Father engaged in conduct that endangered Claire's physical or emotional well-being. *City of Keller*, 168 S.W.3d at 813-14. Because the record contains legally and factually

sufficient evidence to support the jury's conclusion that Father engaged in conduct that endangered Claire, we overrule Father's second issue.

### C. Best-Interest Finding—Father

In a parental-rights termination case filed by the Department, the Department must establish with clear and convincing evidence that terminating the parent's right to his child is in the child's best interest. *See E.N.C.*, 384 S.W.3d at 807. "In determining whether the evidence is legally sufficient to support a best-interest finding, we 'consider the evidence that supports a deemed finding regarding best interest and the undisputed evidence,' and ignore evidence a fact-finder could reasonably disbelieve." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 268). In evaluating evidence relevant to a child's best interest, there is a "rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." Tex. Fam. Code Ann. § 153.131(b) (West 2014); *see also In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (noting a "strong presumption" exists favoring keeping a child with its parent). Courts also presume that a prompt and permanent placement of a child in a safe environment is in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West Supp. 2017). In reviewing a trial court's

best-interest finding, we consider the nine non-exhaustive factors identified in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[5]

In his fourth issue, Father suggests that the evidence before the jury fails to offer legally and factually sufficient support for the jury's decision that terminating his rights is in Claire's best interest.[6] We have already explained that the jury considered evidence that allowed it to conclude that Father touched Claire inappropriately more than once. While Father's testimony did not detail his plans if the jury rejected the Department's claims seeking to terminate his parental rights, Mother's testimony suggests that she planned to raise Claire at home where Father

---

[5] In *Holley*, the Texas Supreme Court applied these factors in reviewing a best-interest finding:

- the child's desires;
- the child's emotional and physical needs, now and in the future;
- the emotional and physical danger to the child, now and in the future;
- the parenting abilities of the parties seeking custody;
- the programs available to assist the parties seeking custody;
- the plans for the child by the parties seeking custody;
- the stability of the home or the proposed placement;
- the parent's acts or omissions, which may indicate that the existing parent-child relationship is improper;
- any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

[6] Following the trial, Father filed a post-judgment motion alleging that legally and factually sufficient evidence supports the jury's best-interest finding.

would continue to have access to her. Father's and Mother's testimony also suggests that they would consider giving Claire to her maternal grandmother ("Grandmother"), who was raising Ian. Grandmother, who lives in Georgia, testified during the trial that while she would agree to allow Claire to live in her home, she did not believe that Mother's or Father's rights should be terminated. Grandmother also testified that she thought that Mother and Father could care for a child, as she allowed both to have unsupervised visitation with Ian. Grandmother never testified that should Claire be placed in her care, she would supervise Father's visits. Given her testimony about the possible arrangement, the jury could have viewed the arrangement as insufficient to protect Claire's physical and emotional needs. *See R.R.*, 209 S.W.3d at 116 (noting that the factors the jury may consider in resolving questions about the child's best interest include evidence showing the child's family is willing to make decisions that would effect positive changes).

The evidence before the jury also allowed the jury to conclude that the Department placed Claire in a stable and safe placement. According to one of the Department's caseworkers who testified in Claire's case, Claire is a happy, smiling, and healthy baby. Another of Claire's caseworkers testified that Claire's foster parents are taking good care of her, and that in working with Mother and Father, the

14

Department decided that Claire's parents had insufficient parenting skills to care properly for a child of Claire's age.

Given the testimony about Father's conduct, the jury could have formed a firm belief or conviction that allowing Father's parent-child relationship to continue would be dangerous to Claire's short and long term physical and emotional well-being. We conclude that legally and factually sufficient evidence supports the jury's finding based on subsection E that terminating Father's parental rights is in Claire's best interest. *See J.F.C.,* 96 S.W.3d at 265-66 (holding that the appellate court's analysis of a jury's verdict should determine whether a reasonable jury, upon proper instruction using a clear and convincing standard of proof, could have formed a "firm belief or conviction" about the decision in the dispute); *see also L.C.,* 145 S.W.3d at 796 (explaining that evidence showing that a parent sexually assaulted a child endangers a child's emotional and physical well-being). Because legally and factually sufficient evidence supports the jury's best-interest finding, we overrule Father's fourth issue.

II.    Ineffective Assistance of Counsel

A. Instances of Allegedly Deficient Performance

In issue five, Mother and Father suggest that a retrial is needed because the respective attorneys who represented them in the trial provided them with ineffective

15

assistance. Father directs his complaints about his trial attorney at the attorney's failure to object to testimony that showed a Georgia court had rendered a judgment terminating his parental rights to Ian, his youngest son. Father also complains that his trial attorney published a document[7] to the jury alluding "to the trial court judge's prior rulings" about the circumstances that led to the Department initiating an investigation into his care of Claire which in turn led the Department to seek to have his rights to Claire terminated. Father suggests that his trial attorney then compounded that error by failing to object when the attorney appointed to represent Claire questioned one of Claire's caseworkers about the trial court's decision denying Mother's motion asking that the trial court return Claire to her or to allow

---

[7] Father's appellate attorney failed to provide a record reference in his brief to the exact page of the document that he is complaining about in issue five. The document that we presume Father's appellate attorney intended to reference is a seven-page document titled Family Service Plan. The document bears a stamp showing that it was printed on June 8, 2017. In the middle of page one of that document, under a heading about why the Department became involved in Claire's case, the document states: "The Department received a call from [the trial court judge] stating he was in a custody hearing for [Claire] and was ordering [temporary managing conservatorship] at this time. He stated the concerns include mental capacity of the parents, sexual abuse of the child, extensive [Child Protective Services] history in the state of Georgia[.]" Within what appears to us as no more than three minutes, the trial court sent the jury out of the courtroom and alerted Father's trial attorney that the jury could see the document, which violated the ruling the trial court made on Father's motion in limine. Before the jury returned, the trial court stated that it would redact the language on page one of the Family Service Plan that conveyed that the trial court was the entity that called the Department to get the Department involved in Claire's case.

16

Claire to reside with her parents "on a monitored basis." The record shows the caseworker testified that the trial court denied both requests.

Father also alleges that trial counsel performed deficiently because he should have objected to the relevance of various questions asked by the attorney the trial court appointed to represent Claire. The questions Father points to concern questions about whether Father sexually assaulted his three nieces when they were children. Father also points to instances in the record where his trial attorney appears to have had trouble introducing some documents into evidence. And Father complains on appeal that his trial attorney allowed lay testimony to come before the jury characterizing him as "mentally disabled." Finally, Father complains that his attorney failed to object to the relevance of certain other testimony during the trial. According to Father, the record shows that his trial attorney failed to fight for him while handling the case.

Mother points to alleged deficiencies about her trial attorney's performance that differ in character from the ones that Father points to in his brief. Mother asserts the record shows that her trial attorney failed to conduct any discovery, to file a motion in limine, to subpoena any witnesses, to investigate her claims, or to file any pleadings other than the jury demand. Mother also complains that during opening statement, her attorney stated that he agreed with the attorneys for the other parties

in some respects but that unlike them, he had not yet made up his mind about what would be best for Claire.

### B. Standard of Review

An indigent parent has a right to appointed counsel in a parental-rights termination case. *In re B.G.*, 317 S.W.3d 250, 253 (Tex. 2010). The entitlement to appointed counsel includes a right to effective counsel. *Id*. In assessing whether counsel was ineffective, appellate courts in parent-termination cases apply the same standard that courts apply to such claims that arise from criminal trials. *In re M.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003). To establish ineffective assistance of counsel, Father and Mother must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005). To prevail on such claims, the party who claims they received ineffective assistance of counsel must show that representation fell below an objective standard of reasonableness and show that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 688, 694; *M.S.*, 115 S.W.3d at 544-45 The burden of proving such claims lies with the complaining party. *M.S.*, 115 S.W.3d at 545.

In considering if counsel's performance was deficient, we consider all the circumstances that surround the case. *Id*. When evaluating trial counsel's performance, we focus on whether counsel performed in a reasonably effective manner. *Id.* at 545. Our review of counsel's performance is highly deferential, and we presume that counsel's conduct fell within the range of reasonable professional assistance, considering "the possibility that counsel's actions [were] strategic." *Id*. "'An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Walker v. Tex. Dep't of Family & Protective Servs*., 312 S.W.3d 608, 622-23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *In re K.K*., 180 S.W.3d 681, 685 (Tex. App.—Waco 2005, no pet.)). Conduct that trial attorneys engaged in during trials is not generally viewed as supporting a claim alleging ineffective assistance of counsel unless "'the conduct was so outrageous that no competent attorney would have engaged in it[.]'" *M.S*., 115 S.W.3d at 545 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

### C. Analysis—Father's Ineffective Assistance of Counsel Claim

In his brief, appellate counsel points to several matters to support his argument claiming that trial counsel performed deficiently in representing Father during the trial. One of his primary complaints is that trial counsel allowed the jury to see

language in the Family Service Plan that he claims conveyed the trial judge's view about the case.[8] While the first page of the Family Service Plan appears to have been exhibited briefly in a location where the exhibit was within the jury's view, whether the jury saw the sentence that Father complains about is impossible to determine from the record. Thus, we cannot determine on this record whether the trial attorney's conduct resulted in any harm. We hold that on this record Father cannot establish that the error he complains about was harmful or that the sentence at issue, if seen by the jury, altered the outcome of the trial. *See Strickland,* 466 U.S. at 688, 694; *M.S.,* 115 S.W.3d at 544-45.

We are also unable to conclude that Father's trial counsel engaged in conduct so outrageous that it was constitutionally deficient. Father's appellate counsel moved for a new trial, but the motion fails to include any evidence from an attorney explaining what the standard of care requires of attorneys handling cases involving cases filed by the Department seeking to terminate a parent's rights. Nor does the record contain an explanation from Father's trial attorney about the strategic decisions that he made in the trial.

---

[8] The unredacted sentence the jury might have seen is in the middle of the first page of the Family Service Plan. The sentence Father complains about, which the judge redacted before allowing the exhibit into evidence, states: "The Department received a call from [the trial judge who handled the termination case] stating he was in a custody hearing for [Claire] and was ordering TMC at this time."

20

We conclude that Father's claim of ineffective assistance of counsel is not firmly founded in the record. As a result, we hold that Father has failed to meet his burden to establish either of the grounds he had the burden of proving under *Strickland*. *See Strickland*, 466 U.S. at 694. For these reasons, we overrule Father's fifth issue.

### D. Analysis—Mother's Ineffective Assistance of Counsel Claims

In issue five, Mother argues that her trial attorney performed deficiently when handling her case both before and during the trial. According to Mother, her attorney failed to conduct a proper investigation into the case, to file any pleadings other than a jury demand, to conduct pretrial discovery, or to subpoena witnesses (without identifying who they were or what they might have said) to testify in trial. Mother also complains that some arguments that trial counsel made on her behalf did not benefit her in the trial. If liberally construed, Mother's complaints about counsel's deficiencies include one that counsel failed to preserve her rights to challenge the sufficiency of the evidence that supports the findings the jury made on the controlling issues in her case.[9] *See* Tex. R. App. P. 38.9 (requiring appellate courts

---

[9] Mother does not expressly make these claims in her brief, but we liberally construe her global complaint about her trial attorney's failure to file pleadings (other than a jury demand) as broad enough to include them.

to construe briefs liberally). Giving Mother's complaints about trial counsel as liberal an interpretation as possible, we will review the various arguments that Mother raises in her first four issues when evaluating her various claims that her counsel was ineffective and violated the standards in *Strickland* even though trial counsel failed to preserve these claims for our review.[10] *See Strickland,* 466 U.S. at 688, 694; *M.S.*, 115 S.W.3d at 544-45.

First, we address Mother's arguments suggesting that the record does not contain legally or factually sufficient evidence to support any of the three predicate findings the judgment in her case relies on to terminate her parental rights to Claire. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E),161.003(a)(1), (2). Because it is

---

[10] In its brief, the Department contends that Mother failed to preserve her legal and factual sufficiency issues for review on appeal. We agree with the Department that Mother did not properly preserve her argument by filing appropriate post-trial motions or by raising proper objections to the charge. When appealing from a jury verdict, Mother was required to preserve her right to appellate review on her legal and factual sufficiency claims by filing either (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) a motion to disregard the jury's answer to a vital fact issue, (4) a motion for new trial, or by (5) lodging objections to the trial court's decision submitting the controlling issues to the jury. *See Cecil v. Smith,* 804 S.W.2d 509, 510-11 (Tex. 1991); *In re D.J.J.*, 178 S.W.3d 424, 426-27 (Tex. App.—Fort Worth 2005, no pet.). To preserve a factual sufficiency issue, the record must show that the appellant moved for new trial claiming the evidence is factually insufficient to support the jury's verdict. *See* Tex. R. Civ. P. 324(b)(2); *see also In re A.M.*, 385 S.W.3d 74, 78-79 (Tex. App.—Waco 2012, pet. denied); *In re J.M.S.*, 43 S.W.3d 60, 62 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

unnecessary to address each of the predicate findings separately if any one of them is supported by the verdict, we will first address Mother's arguments that challenge whether sufficient evidence was before the jury to support the jury's determination under section 161.003 that Mother has an "emotional illness or a mental deficiency that renders her unable to provide for the physical, emotional, and mental needs of the child[.]" *See A.V.*, 113 S.W.3d at 362.

Section 161.003 of the Family Code states

> [t]he court may order termination of the parent-child relationship…if the court finds that: (1) the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child [and] (2) the illness or deficiency…will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child[.]

Tex. Fam. Code Ann. § 161.003(a)(1), (2).

During the trial, Mother acknowledged that she is a slow-learner, is on social security disability, and graduated from high school while enrolled in a special education program. The evidence presented at trial pertinent to both Mother's care of Ian and Mother's care of Claire allowed the jury to infer that Mother did not have sufficient skills or knowledge about how to raise a child. For example, the evidence shows that Mother's rights to Ian were terminated by the State of Georgia because Mother did not understand how to feed and care for him. When Mother testified, she agreed that the agency in Georgia responsible for investigating child welfare

23

expressed concerns about her parenting skills, concerns that she acknowledged included her apparent lack of knowledge about how to feed and bathe a newborn child. The testimony before the jury about Ian's care allowed the jury to infer that Mother allowed other members of her family to feed Ian food that a child of his age should not be eating. The evidence also suggests that Mother did not know she needed to keep Ian's head above water when she bathed him. Finally, the jury could reasonably view Mother's failure to advise the child welfare agency in Georgia that she was pregnant, as well as her decision to move to Texas while pregnant with Claire, as decisions designed to avoid allowing the agency to interfere with her rights to parent Claire as she thought appropriate. The jury could have reasonably viewed Mother's decision to leave Georgia as an effort to avoid investigation by child welfare into whether she possessed the abilities to parent a child.

The evidence before the jury revealed that Mother also has a teenage son, unrelated to Father, that was living with her in Georgia before she and Father moved to Texas. The testimony showed that Mother's teenage son elected to remain in Georgia, with Grandmother, when Mother moved to Texas. The evidence also showed that Mother and the teenager had lived with Grandmother beginning when he was four years old. During the trial, Grandmother testified that she was providing a support system to help Mother parent Ian and her teenage son. The jury could have

24

determined that Grandmother's ability to help Mother stopped when Mother and Father moved to Texas. According to Grandmother, Mother is a person who can be easily manipulated because she is too trusting and believes that everyone is honest.

Rebecca addressed her views about Mother's ability to care for children when she testified in the trial. According to Rebecca, after Mother had Claire, Mother asked her basic questions about caring for infants, such as when she should wake up and feed Claire. Rebecca also described statements she heard Mother make threatening Claire' safety. According to Rebecca, she heard Mother threaten to harm Claire by burning her in a bonfire and by drowning her in a bathtub. Rebecca testified that she took these threats seriously and called the police.

The Department's caseworkers assigned to Claire's case testified in the trial. Both criticized Mother's ability to parent a child. One of the Department's caseworkers testified that he observed Mother exercise her supervised visitation with Claire after the court placed Claire in the Department's care. According to the caseworker, Mother did not interact with Claire during the visits despite his instructing her that she needed to do so. The same caseworker testified that he observed Mother relying on Father for the most part to handle the responsibilities placed on the parents during their visits. While the evidence shows that Mother completed most of her obligations under the Department's family service plan and

shows that Mother attended parenting classes, the caseworker testified that the services that Mother received and the services available to her were insufficient, in his opinion, to overcome Mother's lack of skills.

The Department supervisor assigned to Claire's case testified that she did not believe more parenting classes would remedy Mother's limited capacity to improve her skills in caring for a child. From the testimony presented by the Department, the jury could have reasonably concluded that Mother lacked sufficient insight into her lack of skills to improve them to any significant degree. Given the other evidence before the jury showing that Mother is a person who can be manipulated and has a trusting nature, the jury's conclusion that Mother's mental deficiency left her unable to care for Claire's short and long-term needs is supported by the evidence in the record.

We conclude the record contains legally and factually sufficient evidence to allow the jury to form a firm belief or conviction that Mother could not adequately provide for Claire's mental, physical, and emotional needs and will be unable to do so until Claire is eighteen. *See* Tex. Fam. Code Ann. § 161.003 (West Supp. 2017). Because the judgment can be supported by the evidence supporting this finding, we need not reach Mother's remaining legal and factual sufficiency arguments

challenging the jury's findings relevant to terminating her rights under subsections D and E of the Family Code.[11] Tex. Fam. Code Ann. §161.001(b)(1)(D), (E).

We also review the jury's best-interest finding in evaluating Mother's ineffective assistance of counsel claims. We once again note that we review a jury's best-interest finding using the nine non-exhaustive *Holley* factors. *See Holley,* 544 S.W.2d at 371-72.

In deciding what was in Claire's best interest, the jury faced choosing between the Department's plans for Claire—termination and adoption by a non-relative—and Mother's plans for Claire—either to allow her to continue to act as Claire's Mother, to allow Grandmother to become Claire's managing conservator, or to allow Rebecca to have that role. The jury decided that terminating Mother's rights is in Claire's best interest, a finding that is reasonable given the evidence relevant to the choices the parties asked the jury to consider in the trial. Viewed in the light most favorable to the verdict, Mother lacks the parenting skills she needs to prevent Claire from being exposed to the risk of repeated incidents of Father's sexual misconduct. The jury could have viewed Mother's proposals to create conservatorships over

---

[11] *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003) (holding that a jury's termination of the parent-child relationship will be sustained if there is legally and factually sufficient evidence to support the jury's verdict on any of the grounds if the jury also finds that terminating the parent's rights is in the best interest of the child); *see also* Tex. R. App. P. 47.1.

Claire with other family members as insufficiently protective of Claire's physical and emotional well-being, given the testimony about the dynamics of those relationships in the trial and the threats Mother made regarding Claire. Finally, the jury could have viewed the Department's plans for Claire as the plan that gave Claire the best chance of being raised in an environment free from the risks posed by Mother and Father. We conclude the evidence is legally and factually sufficient to support the jury's best-interest finding.

Next, we address Mother's complaints that her trial attorney had no trial strategy. The record reveals otherwise, as it shows that Mother's attorney argued the jury should allow Claire to remain in the Department's care without terminating Mother's rights so that the court could consider naming Grandmother to be Claire's managing conservator.

Finally, Mother argues that Mother's trial attorney failed to conduct any discovery, to file a motion in limine, to subpoena any witnesses, to investigate her claims, or to file any pleadings other than the jury demand that he filed on her behalf. These claims, however, are not firmly founded in the record. The record fails to show what informal discovery efforts Mother's attorney pursued before trial, what additional discovery an attorney should have obtained, what any witnesses who might have been called would have said had they been called, whether any additional

28

pleadings would have affected the outcome of the trial, or whether any further discovery or testimony would have resulted in a verdict that differs from the one Mother challenges in her appeal. *See Strickland,* 466 U.S. at 688, 694; *M.S.*, 115 S.W.3d at 544-45.

In reviewing ineffective assistance claims, we recognize that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. When the appellant blames trial counsel for the client's loss, we must avoid judging trial counsel's performance in hindsight of the result achieved in the trial. *Id*. Moreover, we must presume the attorney who tried the case "rendered adequate assistance" and that all the decisions the attorney made in the trial were reasonable under the standards that apply to evaluating counsel's exercise of professional judgment. *Id*. at 690. Because Mother failed to meet the burdens imposed on her by *Strickland*, we overrule her fifth issue.

### Conclusion

For the reasons explained above, the trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on July 23, 2018
Opinion Delivered October 18, 2018

Before McKeithen, C.J., Kreger and Horton, JJ.